Chester PATTY, Petitioner-Appellant,

v.

Donald E. BORDENKIRCHER, Jr., Superintendent Kentucky State Penitentiary, Respondent-Appellee.

No. 78–3142.

United States Court of Appeals,
Sixth Circuit.

Argued June 21, 1979.

Decided Aug. 16, 1979.

Chester Patty, pro se.

G. David Yaros, [court-appointed CJA], Cincinnati, Ohio, for petitioner-appellant.

Robert F. Stephens, Atty. Gen., Frankfort, Ky., David Russell Marshall, for respondent-appellee.

Before WEICK and MERRITT, Circuit Judges and PECK, Senior Circuit Judge.

MERRITT, Circuit Judge.

Chester Patty, as petitioner for a writ of habeas corpus, collaterally attacks his forty year sentence in the Commonwealth of Kentucky imposed on June 19, 1974, under Kentucky's old Habitual Criminal Act. On June 19, 1974, Patty was convicted of burglary in the criminal court of Caldwell County at Princeton, Kentucky. Patty took the stand in his own defense at this trial. Two days later a second separate, so-called "bifurcated" trial was conducted on the habitual criminal charge.[1] In the habitual criminal proceeding, Patty was called to the witness stand by the prosecutor who elicited evidence of a prior criminal conviction, an element of the habitual criminal offense. Neither the Court nor the prosecutor advised Patty of his right under the fifth amendment not to "be compelled in any

---

1. Kentucky's former Habitual Criminal Act, Ky.Rev.Stat. § 431.190, repealed effective January 1, 1975, provided in part: "Any person convicted a second time of felony shall be confined in the penitentiary not less than double the time of such sentence under the first conviction . . . .. Judgment in such cases shall not be given for the increased penalty unless the jury finds . . . the fact of former convictions for felony committed by the prisoner . . . ." Petitioner's "first conviction" was for a Georgia burglary several years earlier where he was given a 20 year sentence. Petitioner does not attack the constitutionality of this provision of the old Habitual Criminal Act.

criminal case to be a witness against himself." His counsel did not object to the action of the prosecutor.

In addition, the Court did not permit Patty's counsel to make a closing or final argument to the jury in the habitual criminal trial. Under Rule 9.54(1) of the Kentucky Rules of Criminal Procedure, it is the "duty of the Court to instruct the jury in writing" as to the law of the case. These instructions are given by the Court "to the jury prior to the closing summations of counsel." The record of the habitual criminal trial shows that the trial judge, after instructing the jury, asked the sheriff if the jury room were "ready" and told the members of the jury to "accompany the sheriff to the jury room to deliberate upon the rest of your verdict." At that point Patty's counsel objected "to the failure of the court to allow final argument in the pending case," and the trial judge replied: "Let the record reflect that there was no request made by any counsel at this phase of the case to argue this phase of the case before the jury." The jury then retired to consider its verdict. If found petitioner guilty as a habitual criminal and gave him a forty year sentence.

On October 15, 1975, the Court of Appeals of Kentucky affirmed Patty's conviction and sentence without a discussion of the issues raised on appeal. He raised the claim that his right not to be a witness against himself had been violated when the prosecutor called him to the witness stand and further claimed that his right to counsel and a fair trial under the sixth amendment had been abridged when the trial court declined to allow his counsel the opportunity to make a closing argument.

On petition for a writ of habeas corpus, the District Court found that Patty had adequately exhausted his state court remedies. But the District Court concluded on the self-incrimination question that

The petitioner was represented by counsel at the time of his trial below; yet no objection was made when the petitioner was called to the stand to testify about his prior conviction. Therefore any right

against self incrimination that may have existed was waived. *See Cravens v. United States,* 62 F.2d 261, 273 (8th Cir.), cert. denied, 289 U.S. 733, 53 S.Ct. 594, 77 L.Ed. 1481 (1933); *cf. United States v. Doremus,* 414 F.2d 252 (6th Cir. 1969).

With respect to the sixth amendment question, the District Court held that "the trial court's refusal to allow petitioner a closing argument did violate his sixth and fourteenth amendment right to the effective assistance of counsel," citing *Herring v. New York,* 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975). The District Court went on to hold, however, "since the jury's duty in sentencing under the habitual criminal statute, KRS 431.190, is mandatory, and no fact question was presented to them, that violation was harmless beyond a reasonable doubt." We reverse.

■ 1. *Self-Incrimination.*—We do not remember or find any cases where the prosecutor has called a criminal defendant to the stand in order to prove an element of the crime. The general acquiescence of lawyers in a custom to the contrary suggests that Professor Wigmore's observations on this subject are correct:

For the party-defendant in a criminal case, the privilege permits him to refuse answering any question whatever in the cause, on the general principle that it "tends to criminate" . . . . .

This being so, the prosecution could nevertheless on principle have a right at least to call him to be sworn, because, as with an ordinary witness, it could not be known beforehand whether he would exercise his privilege. But no Court seems ever to have sanctioned this application of the principle.

This result may be rested on several considerations:

(1) Historically, the privilege existed long before the abolition of the accused's disqualification; hence, until those statutory changes (in 1860–1900), the accused could not testify even if he were willing; thus, to call him would be useless, and the negative practice became fixed. (2) Under the modern statutory competency of

the accused, if he should choose to testify when the time comes for putting in his case, the prosecution may on his cross-examination put the questions which it could have put on calling him earlier, and thus the prosecution's opportunity to find whether he will exercise his privilege is practically obtained. (3) Even though the prosecution might technically be entitled to that opportunity at the earlier stage, still the exercise of this technical right need hardly be conceded, since the procedure could only have, as its chief effect, the emphasizing of his refusal, should he refuse, and thus the indirect suggestion of that inference against him from which he is protected by another aspect of the principle . . .. (4) By the express tenor, in most jurisdictions, of the statute qualifying the accused, he is declared to be a competent witness "at his own request, but not otherwise" . . .. Whether this form of words was chosen with a view to its present bearing can only be surmised; but its evident effect is to forbid the calling of the accused by the prosecution. VIII Wigmore, Evidence § 2268 (McNaughton ed. 1940).

*See also Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), in which the court held that a prosecutor's comment on defendant's failure to take the stand violates the privilege against self-incrimination. Nothing could more effectively emphasize and undermine a defendant's exercise of this right than to allow the prosecutor to call him to the stand and put him to the test in front of the jury.

█ 2. *Final Argument.*—The Supreme Court has recently held in *Herring v. New York,* 422 U.S. 853, 858–59, 95 S.Ct. 2550, 2553–54 (1975), that "a total denial of the opportunity for final argument" abridges "the basic [sixth amendment] right of the accused to make his defense" and that this is true "no matter how strong the case for the prosecution may appear to the presiding judge." This is a *per se* rule. The Supreme Court has indicated that the strength of the prosecution's case is not a factor. The District Court erred, therefore, in applying the harmless error rule of *Chapman v. Califor-*

*nia,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

For these reasons we hold that the state abridged petitioner's fifth and sixth amendment rights in the conduct of the habitual criminal trial. We reverse and remand with instructions to the District Court to grant the petition for a writ of *habeas corpus ad subjiciendum* and set aside petitioner's conviction and sentence under the Kentucky Habitual Criminal Act, formerly Ky.Rev.Stat. § 431.190. Our decision only affects Patty's habitual criminal conviction, not any convictions for other crimes, and does not affect or decide any question regarding the state's power to seek retrial on the habitual criminal charge.

JOHN W. PECK, Senior Circuit Judge, concurring.

I concur in the result reached in the majority opinion, but because that result is clearly mandated by the refusal of the trial court to permit defense counsel to make an oral argument to the jury, I see no occasion to deal with the Fifth Amendment issue on the record presented by this case.

Like my brethren, I am surprised, not to say startled, by the fact that the prosecution established an essential element of its case by calling the defendant as its own witness. Unorthodox as this procedure may be, the further fact is that the defendant was represented by counsel, and strategy considerations for interposing no objection suggest themselves. For example, keeping in mind that the element involved was whether the defendant was the individual named in the Georgia record of conviction (a formal element easily established by other, albeit more cumbersome, evidence), counsel may very well have concluded that to require the government to go the long route to establish this point could antagonize the judge and jury, whereas cooperation might well result in favorable consideration.

Present counsel argues that the failure to object establishes his predecessor's incompetence, and suggests the possibility that that

predecessor did not advise the defendant of his Fifth Amendment rights. However, in the light of the entire record and particularly trial counsel's articulate objection upon being denied the right to present oral argument, thereby preserving that issue for our review, it seems more likely that he knew exactly what he was doing, and that as a competent lawyer he fully advised his client of his rights.

I see no occasion to reach this issue, since I have reservations concerning the advisability of establishing a per se rule in this area.