STATE of South Dakota, Plaintiff and Appellee,

v.

Troy DACE, Defendant and Appellant.

No. 13854.

Supreme Court of South Dakota.

Argued Feb. 16, 1983.

Decided April 27, 1983.

Rehearing Denied June 6, 1983.

Grant E. Gormley, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Reed C. Richards of Richards & Richards, Deadwood, for defendant and appellant.

FOSHEIM, Chief Justice.

Troy Dace (appellant) was charged with attempted rape, SDCL 22–22–1(1) and SDCL 22–4–1;[1] aggravated assault, SDCL 22–18–1.1(4);[2] and kidnapping. He was convicted of attempted rape and aggravated assault. The jury acquitted him of kidnapping. We affirm the convictions.

---

1. SDCL 22–22–1(1) reads: Rape is an act of sexual penetration accomplished with any person other than the actor's spouse under any one or more of the following circumstances:

   (1) Through the use of force, coercion or threats of immediate and great bodily harm against the victim or other persons within the victim's presence, accompanied by apparent power of execution[.]

SDCL 22–4–1 reads in pertinent part: Any person who attempts to commit a crime and in the attempt does any act toward the commission of the crime, but fails or is prevented or intercepted in the perpetration thereof, is punishable[.]

2. SDCL 22–18–1.1(4) reads: Any person who: (4) Assaults another with intent to commit bodily injury which results in serious bodily injury ... is guilty of aggravated assault.

The crimes occurred on May 13, 1981, and involved J.K., a sixteen-year-old boy. Because of family troubles, J.K. had left home. He attended a rock concert that night in Rapid City where he met appellant. He accompanied Mr. Dace to his home in Spearfish, South Dakota, where the offenses occurred.

At his arraignment, the trial court painstakingly, in understandable language, advised the defendant of his Fifth Amendment rights including his right of waiver. The court canvassed with him to make certain he understood.

Before trial, appellant gave notice of an alibi defense. He voluntarily took the stand in his own behalf and testified that he had never seen J.K. before in his life and that he lived in a trailer court at Spearfish. He denied that he was in Rapid City on the evening of May 13, 1981. The transcript reveals that after a few questions on cross-examination, this colloquy occurred between court and counsel.

MR. WOODRUFF: Excuse me, Your Honor, beyond the scope of direct.

THE COURT: Gentlemen, do you want to approach the bench please.

(Off the record discussion held at the bench between counsel and the Court.)

MR. TELLINGHUISEN: Your Honor, at this time, the State would call Mr. Dace as our own witness.

THE COURT: You may proceed.

MR. TELLINGHUISEN: Thank You.

TROY DACE,

called as a witness by the State, having been previously sworn, was examined and testified as follows[.]

Appellant's testimony was repeatedly interrupted with off-the-record discussions at the bench. The judge finally recessed court and the problem was further discussed in chambers. The prosecutor said he proposed to ask the defendant questions about other

similar homosexual incidents contending they were relevant to show intent and to establish identity, plan or scheme.

Defense counsel countered that Mr. Dace's sexual preferences were irrelevant to any specific criminal intent, motive, scheme, plan or identity since homosexuality is not a crime and that the prejudicial effect of such questioning would outweigh its probative value. Defense counsel was also concerned about the similarity and remoteness of each claimed incident. The court refused to allow questioning concerning one incident, but allowed the others. When court convened, the record shows:

THE COURT: Mr. Dace, do you want to resume the witness stand?

(Defendant resumes witness stand).

THE COURT: Yes, you may proceed.

Following the defendant's testimony, the court instructed defendant to call his next witness. The jury was instructed that the evidence about to be introduced of other acts was admissible solely to show specific intent, motive, plan, scheme, intent to commit the alleged rape, or to show the identity of the defendant as the person who committed the offenses charged. Instruction No. 32 was similar.

The transcript reveals that while defendant objected to some of the questions asked, he indicated no reluctance to testify for self-incrimination reasons. Appellant concedes he partially waived his right not to incriminate himself but claims his testimony on his own behalf related only to preliminary matters, under SDCL 19–9–10,[3] and to credibility, under SDCL 19–14–11.[4] Appellant's testimony on his own behalf clearly attempted to establish his defense of mistaken identification and alibi. It therefore went directly to the issue of his guilt or innocence and was not confined to preliminary matters or credibility.

3. SDCL 19–9–10 reads: The accused does not, by testifying upon a preliminary matter, subject himself to cross-examination as to other issues in the case.

4. SDCL 19–14–11 reads: The giving of testimony, whether by an accused or by any other witness, does not operate as a waiver of his privilege against self-incrimination when examined with respect to matters which relate only to credibility.

Appellant contends the testimony of other homosexual acts was prejudicial. The trial court ruled that testimony of previous similar incidents was admissible pursuant to SDCL 19–12–5.[5] Under that statute, evidence of other crimes, wrongs or acts is admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Such other incidents are material if they show a plan or system of criminal action and acts constituting continuous offenses. *State v. Johnson,* 316 N.W.2d 652 (S.D. 1982). In *Johnson,* Chief Justice Wollman, writing for this court quoted with approval:

Since identity, like intent, is usually an ultimate issue in the case, there is no need to look beyond the inference to identity in determining the relevance of other crimes, wrongs, or acts offered under this exception. Often, however, the inference from the other act to identity may involve an intermediate inference to motive, plan, knowledge, or opportunity and many of the cases dealing with evidence of other crimes offered for this purpose may be found under other exceptions. Indeed, McCormick says that identity is usually proved by one of these intermediate inferences....

The exception in Rule 404(b) [SDCL 19–12–5] for use of other crimes evidence to prove identity will probably be used most often to encompass another exception in McCormick's list that does not appear elsewhere in the Rule: "[t]o prove other like crimes by the accused so nearly identical in method as to earmark them as the handiwork of the accused." This exception, often referred to as the "handiwork or signature exception" or the exception for "modus operandi" is, however, only one method by which other crimes can prove identity....

316 N.W.2d at 654, *quoting from* 22 C. Wright & K. Graham, Federal Practice and

Procedure § 5246, pp. 511–12 (1978) (footnotes omitted) (quoting, inter alia, McCormick, Evidence, § 190, p. 449 (Cleary ed. 1972)). Having determined that evidence of similar incidents had probative value, the trial court, in the exercise of sound discretion, was obliged to balance its probative value against the risk of unfair prejudice. *State v. Brown,* 285 N.W.2d 843 (S.D.1979). Our review is whether there has been an abuse of that discretion. *State v. Houghton,* 272 N.W.2d 788 (S.D.1978). We cannot conclude from the record that the trial court abused its discretion.

Appellant particularly complains of the testimony concerning a homosexual act with a consenting adult since it was not evidence of any crime. SDCL 19–12–5 does not require that the other acts be criminal or even wrongful. In *Johnson, supra,* at 654, we said "[a]ny fact that tends to connect an accused with the commission of a crime is relevant and has probative value." The defendant was not charged with a sex offense applicable only to minors. Nevertheless, nonconsent is an essential element of attempted rape. (SDCL 22–22–1(1)). Furthermore, the challenged evidence did not show an identifying propensity toward underage males. Accordingly, we agree that evidence of an incident with an adult, lacking nonconsent, was so dissimilar as to render it inadmissible. Was the admittance of this evidence prejudicial error? As appellant argued, the inadmissible act only indicated his sexual preference. The admissible similar incidents all clearly included and established that preference. Evidence of the challenged act was therefore cumulative as to the defendant's homosexuality. Prejudicial error is that which in all probability must have produced some effect upon the final result. *State v. Rosales,* 302 N.W.2d 804 (S.D.1981). Any error which does not affect substantial rights is harmless. SDCL 23A–44–14.[6]

---

**5.** SDCL 19–12–5 reads: Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

**6.** SDCL 23A–44–14 reads: Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.

■ Appellant next argues that when he took the witness stand the court should have again sua sponte advised him of his Fifth Amendment rights pursuant to SDCL 19–2–8.[7] This statute expressly makes an exception where the defendant voluntarily testifies in his own behalf. Unlike subpoenaed witnesses, the accused can only be a witness if he knowingly and willingly elects to testify. Also, unlike other witnesses he has already been carefully advised of his Fifth Amendment rights by the court. Additionally, he likely has the benefit of counsel throughout the trial. Notwithstanding the statutory exception, however, if the accused were acting pro se, or appeared not to fully grasp the importance of what he was about to do, the court would have been well advised to remind him of his right against self-incrimination.

We turn next to the most complex issue. Appellant argues that his Fifth Amendment rights were violated because 1) the questions of the State exceeded Fifth Amendment scope and 2) trial court allowed the State to call him as its witness which appellant claims was plain error (SDCL 19–9–6 and 23A–44–15 [8]) even though his counsel did not object.

■ We have recognized the plain error rule, but only in exceptional cases and then it must be applied cautiously. It does not encompass every error that occurs at trial. *State v. Brammer,* 304 N.W.2d 111 (S.D. 1981); *Kramer v. United States,* 408 F.2d 837 (8th Cir.1969); *United States v. Krasn,* 614 F.2d 1229 (9th Cir.1980); *United States v. Castenada,* 555 F.2d 605 (7th Cir.1977). It is only those errors which are both obvious and substantial which rise to the level of plain error. *United States v. Jackson,* 542 F.2d 403 (7th Cir.1976); *United States*

*v. Cowden,* 545 F.2d 257 (1st Cir.1976). We will refer to this later.

The record indicates the court and counsel treated all of the defendant's testimony as a continuing appearance. It further appears the procedure followed was an attempt to operate within SDCL 19–14–19:

> Cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination.

The source of SDCL 19–14–19 is rule 611(b) of the Federal Rules of Evidence. To better apply this rule, we review its background. In 1840 Justice Story, speaking for the United States Supreme Court, announced what came to be known as the restrictive rule.

> [T]he broader principle, now well established, although sometimes lost sight of in our loose practice at trials, that a party has no right to cross-examine any witness except as to facts and circumstances connected with the matters stated in his direct examination. If he wishes to examine him as to other matters, he must do so by making the witness his own, and calling him, as such, in the subsequent progress of the cause.

*Philadelphia and Trenton Railroad Company v. Stimpson,* 14 Peters 448, 461, 39 U.S. 448, 461, 10 L.Ed. 535 (1840). This restrictive rule was a drastic departure from the orthodox common law rule which allowed cross-examination on any relevant matter. Wright, *Federal Practice and Procedure: Criminal 2d* § 416. Its application to a defendant in criminal cases was thus stated:

---

7. SDCL 19–2–8 reads: It shall be the duty of the court, of its own motion and without waiting for objection, to advise a witness at the appropriate time of his right to refuse to answer any question requiring the disclosure of any privileged communication or requiring or tending to require the witness to give testimony which might incriminate him, but the last clause shall not apply to a defendant in a criminal case who takes the stand to testify in his own behalf.

8. SDCL 19–9–6 reads: Nothing in §§ 19–9–3 to 19–9–5, inclusive, precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the court.

SDCL 23A–44–15 reads: Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.

Since the prosecution cannot call the defendant in a criminal case as a witness, the restrictive rule of cross-examination means that the prosecution may examine a defendant taking the stand in his own defense only on 'facts and circumstances connected with' the subjects on which he has chosen to testify on direct examination.

*Id.* However, the restrictive rule met increasing criticism by prominent judges and commentators. 3 Wigmore, Evidence, 3rd ed. 1940, §§ 1885–1890; McCormick, Evidence, Cleary ed. 1972, § 27; *See United States v. Lewis,* 447 F.2d 134 (2nd Cir.1971). In *United States v. Dillion,* 436 F.2d 1093 (5th Cir.1971), the court said:

There is one final rationale for our affirmance of the ruling by the court below. It is our concern over the confusion and wastefulness that results from the restrictive rule of cross-examination upon which appellant bases this appeal. Perhaps Professor McCormick best summarized the criticism of this rule when he said:

"The restrictive practice in all its forms * * * is productive in many court rooms, of continual bickering over the choice of the numerous variations of the 'scope of the direct' criterion, and of their application to particular cross-questions. These controversies are often reventilated on appeal, and reversals for error in their determination are frequent. Observance of these vague and ambiguous restrictions is a matter of constant and hampering concern to the cross-examiner. If these efforts, delays and misprisions were the necessary incidents to the guarding of substantive rights of the fundamentals of fair trial, they might be worth the cost. As the price of the choice of an obviously debatable regulation of the order of evidence, the sacrifice seems misguided." C. McCormick, The Law of Evidence § 27, at page 51 (1954).

Several inroads have already been made regarding this restrictive rule, thereby increasing the trial court's discretion in such matters. For example, the voluntary offer of testimony on any fact on direct examination results in a waiver as to "all other relevant facts". See *Brown v. United States,* 356 U.S. 148, 157, 78 S.Ct. 622 [628], 2 L.Ed.2d 589 (1958); *Johnson v. United States,* 318 U.S. 189, 195, 63 S.Ct. 549 [552], 87 L.Ed. 704 (1943); *Martin v. United States,* 404 F.2d 640, 643 (10th Cir.1968).

Furthermore, in the "Preliminary Draft of Proposed Rules of Evidence for the United States District Courts and Magistrates," *Committee on Rules of Practice and Procedure of the Judicial Conference of the United States,* 46 F.R.D. 161 (1969), it is recommended in Rule 6–11(b) that:

'Cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The judge may in the exercise of discretion permit inquiry into additional matters as if on direct examination.' 46 F.R.D. at 302.

See also Advisory Committee Notes, 46 F.R.D. at 304.

The days of the restrictive rule of cross-examination deservedly appear to be numbered.

*Id.* at 1095–96.

In *Tucker et al. v. United States,* 5 F.2d 818 (8th Cir.1925), the Eighth Circuit Court of Appeals followed the restrictive rule. The subsequent above cited "inroad" case of *Johnson v. United States,* 318 U.S. 189, 63 S.Ct. 549, 87 L.Ed. 704 (1943), involved income tax violations. The petitioner took the stand and on direct examination admitted that he had received certain income in 1937. On cross-examination he was asked about income he received in 1938. The defendant insisted the cross-examination should have been limited to the subject opened up by the examination in chief. Justice Douglas writing for the court held:

The case of an accused who voluntarily takes the stand and the case of an accused who refrains from testifying (*Bruno v. United States,* 308 U.S. 287 [60 S.Ct.

198, 84 L.Ed. 257]) are of course vastly different. *Raffel v. United States,* 271 U.S. 494 [46 S.Ct. 566, 70 L.Ed. 1054]. His 'voluntary offer of testimony upon any fact is a waiver as to *all other relevant facts,* because of the necessary connection between all.' 8 Wigmore, Evidence (3d ed., 1940) § 2276(2). And see *Fitzpatrick v. United States,* 178 U.S. 304, 315–316 [20 S.Ct. 944, 948–49, 44 L.Ed. 1078]; *Powers v. United States,* 223 U.S. 303, 314 [32 S.Ct. 281, 283, 56 L.Ed. 448]. The cross-examination did not run afoul of the rule which prohibits inquiry into a collateral crime unconnected with the offense charged. *Boyd v. United States,* 142 U.S. 450 [12 S.Ct. 292, 35 L.Ed. 1077]. Inquiry into petitioner's income for 1938 was relevant to the issue in the case. 318 U.S. at 195, 63 S.Ct. at 552. In Wright, *Federal Practice and Procedure:* Criminal 2d § 416 (footnotes omitted), we find this comment:

> Although the Advisory Committee on Evidence vacillated on the matter, it ultimately proposed, and the Supreme Court approved, a provision that would have adopted the wideopen rule for cross-examination in federal courts. Congress was unpersuaded, however, and restored the rule to the form in which the Advisory Committee had earlier drafted it. It amounts to a watered-down version of the restrictive rule. Evidence Rule 611(b) provides that cross-examination 'should' be limited to the subject matter of the direct examination and matters going to credibility, but gives the court discretion to 'permit inquiry into additional matters as if on direct examination.'

The Advisory Committee's Notes on Proposed Rule 611(b) states:

> When he testifies on the merits, however, can he foreclose inquiry into an aspect or element of the crime by avoiding it on direct? The affirmative answer given in *Tucker v. United States,* 5 F.2d 818 (8th

Cir.1925), is inconsistent with the description of the waiver as extending to 'all other relevant facts' in *Johnson v. United States,* 318 U.S. 189, 195, 63 S.Ct. 549 [552], 87 L.Ed. 704 (1943); See also *Brown v. United States,* 356 U.S. 148, 78 S.Ct. 622, 2 L.Ed.2d 589 (1958).

Thus, as Rule 611(b) was finally adopted by Congress in 1975, cross-examination should normally be limited to matters covered on direct examination. However, it is within the discretion of the trial judge to allow questioning into all other additional relevant matters the same as if on direct examination. This means that if the court, in the exercise of its discretion, allows the inquiry to go beyond the scope of the direct examination, leading questions may no longer be asked as a matter of right. *United States v. Herring,* 602 F.2d 1220 (5th Cir.1979), *cert. denied,* 444 U.S. 1046, 100 S.Ct. 734, 62 L.Ed.2d 732 (1980); *United States v. Franklin,* 598 F.2d 954 (5th Cir. 1979), *cert. denied,* 444 U.S. 870, 100 S.Ct. 147, 62 L.Ed.2d 95 (1979); *United States v. Constanzo,* 581 F.2d 28 (2nd Cir.1978), *cert. denied,* 439 U.S. 1067, 99 S.Ct. 833, 59 L.Ed.2d 32 (1979); *United States v. Ellison,* 557 F.2d 128 (7th Cir.1977), *cert. denied,* 434 U.S. 965, 98 S.Ct. 504, 54 L.Ed.2d 450 (1977). In Wright, *Federal Practice and Procedure:* Criminal 2d § 416, n. 24, it states:

> The Advisory Committee Note to the form of 611(b), as finally adopted said in part: 'The qualification "as if on direct examination," applicable when inquiry into additional matters is allowed is designed to terminate at that point the asking of leading questions as a matter of right and to bring into operation subdivision (c) of the rule.' [9]

This brings us to the extent the privilege against self-incrimination limits the scope of cross-examination which is addressed in 3 Weinstein's Evidence ¶ 611[03]:

---

**9.** Rule 611(c) is our SDCL 19–14–20 which states: Leading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony. Ordinarily leading questions should be permit-

ted on cross-examination. When a party calls a hostile witness, as adverse party, or a witness identified with an adverse party, interrogation may be by leading questions.

Rule 611(b) is silent on the extent to which the privilege against self-incrimination limits the permissible scope of cross-examination.... The problem in relation to cross-examination is to what extent a defendant who voluntarily takes the stand will be deemed to have waived the protection of the privilege. Generally there have been two principal schools of thought.[10] One, including Wigmore [11] and McCormick [12] argues that a defendant who takes the stand waives his privilege as to every relevant fact except facts merely affecting credibility.[13] The other maintains that 'if there is a good reason why a defendant should not be compelled to be a witness against himself, there is an equally good reason why he should not be compelled to testify against his will respecting matters untouched by his direct testimony.'[14]

Historical analysis furnishes no useful clues as to which view is constitutionally correct but does explain why such a seemingly basic question is, as yet, unresolved. The privilege against self-incrimination developed at a time when a defendant was not permitted to testify in his own behalf. By the time he was granted this right in federal cases in 1878,[15] the federal courts had adopted [the Justice Story] restrictive rule of cross-examination.... Consequently, the question of privilege rarely arose since the rule regarding the scope of permissible cross-examination would operate to bar questions about matters not brought out on direct without reference to whether defendant had waived his privilege by testifying.

State practice furnishes no useful analogies because those few jurisdictions which adhered to a wide-open cross examination rule were not, until the Supreme Court's decision in 1964 in *Malloy v. Hogan,* [378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964) ], required to apply the Fifth Amendment [Federal] standard of freedom from self-incrimination.

. . . .

The federal cases which have discussed this problem are not very helpful, because generally they measure the scope of the privilege by the scope of permissible cross-examination without examining the differing policies served by the two rules. We prefer the Wigmore-McCormick school of thought. From that it follows that the prosecutor's questions concerning other relevant facts touched upon by appellant did not exceed Fifth Amendment bounds.

▇▇▇▇ When defense counsel challenged the last cross-examination question on the grounds that it exceeded the scope of direct examination, it would have been cleaner if the trial court had simply ruled that it did but that in the exercise of his discretion, inquiry into other relevant matters would be permitted as if on direct examination. The examination could then have continued absent leading questions

10. "Positions in between the two main approaches are discussed in Wigmore, enumerating six different points of view, 8 Wigmore, *Evidence* § 2276 (McNaughton rev. 1961), and by Morgan who concludes that 'The cases exhibit at least seven different views, and it is difficult to determine in some instances which view is applied and whether the courts of a jurisdiction consistently apply a single rule.' Morgan, Basic Problems of Evidence 178 (1962)." Footnote 3, ¶ 611[03].

11. "8 Wigmore, *Evidence* § 2276 at 465–466 (McNaughton rev. 1961). See also Maguire, Evidence of Guilt, § 2.082, n. 22 (1959)." Footnote 4, ¶ 611[03].

12. "McCormick, *Evidence,* § 131 (1954)." Footnote 5, ¶ 611[03].

13. "Rule 608 is in accord that taking the stand does not waive the privilege in respect to matters solely affecting credibility. See discussion in ¶ 608[07], *supra.*" Footnote 6, ¶ 611[03].

14. "Carlson, 'Cross-Examination of the Accused,' 52 Cornell L.Q. 705, 722 (1967). See also Note, 'Constitutional Law—Is the Restricted Cross-Examination Rule Embodied in the Fifth Amendment?,' 45 N.C.L. Rev. 1030 (1967)." Footnote 7, ¶ 611[03].

15. "20 Stat. 30 (1878) as amended 62 Stat. 833 (1948), 18 U.S.C. § 3481 (1964)." Footnote 8, ¶ 611[03].

without the defendant changing hats. Instead, the cross-examination ended and following a discussion at the bench and apparently without the defendant leaving the witness stand, the examination continued without objection but with the defendant called, and his examination conducted, as a state's witness. We do not, of course, know what was discussed by court and counsel at the bench, but from what the record reveals, it can fairly be inferred that this was understood to be the appropriate way procedurally to permit inquiry into additional matters on direct examination in compliance with SDCL 19–14–19. We are mindful of no reason, and none is urged, how it prejudiced any Fifth Amendment rights of the defendant. It did not affect a substantial right noticeable as plain error. SDCL 23A–44–15. *United States v. Jackson, supra.* We distinguish this from the facts in *Patty v. Bordenkircher,* 603 F.2d 587 (6th Cir.1979). In *Patty,* the defendant took the stand in his own defense at his burglary trial. Two days later a separate trial was conducted on a habitual criminal charge at which the defendant was called to the witness stand by the prosecutor who elicited evidence of a prior criminal conviction which was an element of the habitual criminal offense. The court held this violated the defendant's Fifth Amendment rights.

Appellant next argues that his out-of-court identification was so impermissibly suggestive as to require suppression of his in-court identification. At the trial the deputy sheriff, without objection, testified that while J.K. was in the hospital, he showed him six similar "mug" book photographs and that J.K. then freely identified the defendant, from the photographs, as his assailant.

Several months later at the preliminary hearing, J.K. testified that three or four days earlier, he again viewed a more recent photograph of the defendant which the deputy sheriff showed him. J.K. said the deputy sheriff then asked him if he recognized the person and that he then replied, "It is the person that assaulted me that night." When asked if he knew when he was handed the picture that the person was the arrested defendant, J.K. replied "No. They gave me the picture and when I looked at it I knew it was him." J.K. was then asked how defendant had changed in the interim. He replied that his hair and eyebrows were different. When asked if his present identification was based on the picture, he stated, "No sir. If they wouldn't have showed me the pictures I would have been able to identify." J.K. again positively identified appellant in court at the trial.

■ Whether an identification procedure is so suggestive as to deny due process must be determined from the totality of the circumstances. *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). The facts here are similar on this issue to those before us in *State v. Reiman,* 284 N.W.2d 860 (S.D.1979). In *Reiman,* at 872, we said:

If we assume, however, that any taint arising from the out-of-court identification had not been purged, the in-court identification would nevertheless be admissible, provided the state proved by clear and convincing evidence that the in-court identification was of independent origin. *United States v. Wade* [388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149], *supra; State v. Sahlie,* 245 N.W.2d 476 (S.D.1976). The critical question is whether, prior to the improper stationhouse showup, 'there was already such a definite image in the witness' mind that he is able to rely on it at trial without much, if any, assistance from its successor . . . [and] [i]n making this subtle determination much will depend on the witness' initial opportunity for observation and also whether he was motivated to make a careful observation of the perpetrator.' *United States v. Follette,* 428 F.2d 912, 915 (2nd Cir.1970), *cert. denied,* 400 U.S. 908, 91 S.Ct. 151, 27 L.Ed.2d 146 (1970).

The prosecutrix here had an excellent opportunity to observe her assailants over a period of several hours. She was not a casual bystander, 'but rather the victim of one of the most personally humiliating of all crimes.' *Neil v. Biggers,* 409 U.S.

at 200, 93 S.Ct. at 382, 34 L.Ed.2d at 412. Under the circumstances, her motivation to note carefully the appearances of her attackers could not have been greater. *See also Manson v. Brathawaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). Here the initial opportunity of J.K. to observe his attacker was such that he could, and did, without hesitation identify the defendant in court. We conclude that the State proved by clear and convincing evidence that the in-court identification was of independent origin.

At the conclusion of the second day's proceedings, the state's attorney informed defense counsel that he had become aware of another possible witness. The State then interviewed the prospective witness and notified the defendant's attorney of his name at approximately 9:00 p.m. Defense counsel was unable to attend a telephone conference call with the witness arranged for 11:00 p.m. but did interview him the following morning. Counsel for the defendant objected to the motion of the State to add the witness to the information. He claimed surprise and stated that if he'd had notice of the witness, he'd have wanted a background check and possibly a psychiatric evaluation. The prosecutor represented that prior to the previous day they had not known of the prospective witness. When the court allowed the name of the witness to the information, defense counsel moved for a continuance so that he could get a record check about the witness who had lived "in Florida and Rapid City and Spearfish." The judge then ordered a record check "from Lawrence County and Rapid City." The prosecutor expressed a willingness to delay the witness' testimony and have the Deputy Sheriff ask for a teletype record check from Florida. The witness was allowed to testify and was vigorously cross-examined. According to appellee, the witness was not excused until the information defense counsel ultimately requested was provided. Appellant does not claim otherwise but contends the addition of the witness' name to the information and the failure to grant a continuance was reversible error.

Permission to endorse new witnesses to an information is largely a matter of discretion with the trial court and in the absence of some showing of abuse, or bad faith on the part of the state's attorney in purposely withholding the name resulting in substantial prejudice to the defendant, it will not constitute ground for reversal. *State v. Brown,* 285 N.W.2d 848 (S.D.1979); *State v. Provost,* 266 N.W.2d 96 (S.D.1978); *State v. Keeling,* 89 S.D. 436, 233 N.W.2d 586 (1975); *State v. Rober,* 86 S.D. 442, 197 N.W.2d 707 (1972). There was no indication of bad faith. Appellant was given as much accommodation as the prosecution could extend. We find no abuse of discretion.

During closing argument, the prosecutor said, "some of you with children might be able to imagine your own children sitting up here on the stand." When defense counsel objected, the prosecutor apologized to the court and refrained from further comment in like vein. Appellant now contends this comment was prejudicial error. A judgment of conviction should be reversed for misconduct of counsel when there has been a clear and manifest abuse of discretion. *State v. Kidd,* 286 N.W.2d 120 (S.D.1979). However, the record reveals appellant did not request that the trial court admonish the jury to disregard the remark nor did he move for a mistrial. He did not give the trial court an opportunity to make a decision from which there could be an abuse of discretion. Defendant has therefore not preserved this issue for appeal. *Kidd, supra; State v. Luna,* 264 N.W.2d 485 (S.D.1978).

The last issue is whether the evidence was sufficient to prove the serious bodily injury element of the aggravated assault charge. J.K. testified that the defendant, who said he had been a boxer, hit him in the face and back of the head; tied his hands and gagged him; drug him by his testicles to another room; and finally hit him four hard blows in the right lower back, all of which left him too hurt to move. Apparently, appellant also feared J.K. was seriously hurt, since he promptly undertook

to get him to a doctor. J.K. could not dress himself and appellant had to carry him to the car and out of the car. When he got him out of the car, he had to stand him on his feet. J.K. was hospitalized for six days. His attending physician testified that J.K. had a cut lip, severe pain at the right lower back and had difficulty urinating. There was considerable discoloration on his lower right back. The doctor's diagnosis was a contusion to the right kidney and in his opinion, the injury was such as to give apprehension of damage to the kidney. Bed rest was prescribed. These facts display a greater serious bodily injury than we found insufficient in *State v. Janisch,* 290 N.W.2d 473 (S.D.1980). The evidence was sufficient to prove serious bodily injury.

We have reviewed the other claimed errors and find them to be without merit. The judgment of conviction is affirmed.

All the Justices concur.