Mark KAPPENMAN, Plaintiff
and Appellant,

v.

ACTION INC., d/b/a the Action Co.,
and Dan Kappenman, Defendants
and Appellees.

No. 14892.

Supreme Court of South Dakota.

Argued Nov. 19, 1985.

Decided Aug. 7, 1986.

Richard W. Sabers, Scott D. Kading, on brief, of Moore, Rasmussen, Sabers & Kading, Sioux Falls, for plaintiff and appellant.

Gerald L. Reade, of Brady, Kabeiseman, Reade & Johnson, Yankton, for defendant and appellee Action Inc.

Michael J. Schaffer, of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for defendant and appellee Dan Kappenman.

MORGAN, Justice.

Plaintiff Mark Kappenman (Mark) appeals from an entry of judgment on a jury verdict adverse to Mark and favorable to both defendants. We affirm.

Mark Kappenman and Dan Kappenman (Dan) are brothers who farmed in a partnership from December 1976 through January 1979. During the partnership, Mark used a horse to herd and cut cattle. In December 1981, Mark returned to South Dakota from Wyoming to spend the holidays with his family. At this time, he went to Dan's farm and proceeded to help Dan in rounding up a cow. Dan grabbed his horse and prepared him and asked Mark if he would ride the horse to herd the cow home. Mark was not involved in the saddling or preparation of the horse, but he did adjust some of the equipment during his ride.

Mark rode out toward the cattle herd and cut the cow from the herd. As Mark was pushing the cow toward the farmyard it turned into a chisel-plowed field rather than going into the farmstead. Mark, in an effort to catch up with the cow, kicked the horse into a fast gallop. As the horse began to pass the cow, Mark jerked on the reins. Mark contends that on the second jerk of the reins the right rein snapped from the bridle causing the horse's head to be pulled around to the left. The horse then fell and landed on Mark's right leg. Mark was dragged approximately one hundred fifty feet before his leg finally came free.

As a result of this accident, Mark sustained a broken leg, which required surgery and plating. According to testimony, shortly after Mark was taken to the hospital, Dan called his insurance agent to make sure his premium was paid. The agent testified that Dan told him that the horse slipped on some ice and fell on Mark's leg.

At trial, Mark claimed that Dan was negligent in failing to service the rein and in permitting the rein to be used by Mark. Mark also presented theories of negligence, breach of warranty, and strict liability against the Action Company, the alleged makers of the rein. As noted above, the jury trial resulted in a verdict favorable to both defendants. Mark's issues on appeal relate to procedural irregularities in the conduct of the trial and to the adequacy or propriety of some of the instructions of the court.

■ Mark first contends that irregularities in the trial proceedings denied him a fair trial. Specifically, he claims that the Action Company was allowed to present elements of its defense during cross-examination. During the course of trial, the court permitted Mark to call five witnesses for the purpose of having them testify as to the particular rein they purchased. Their testimony, according to Mark, was foundational in that it was attempting to ascertain that the broken rein was indeed an Action Company rein. There was some question as to the later availability of these witnesses. Mark claims that despite the direct testimony being limited in this manner, the trial court allowed the Action Company to extensively cross-examine these witnesses about the proper maintenance of a rein and proper horsemanship. It is herein that the alleged error is claimed.

SDCL 19–14–19 states: "Cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witnesses. The court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination." This court has recently interpreted SDCL 19–14–19 in the criminal context. *See State v. Dace*, 333 N.W.2d 812 (S.D.1983). In *Dace*, the court stated: "The days of the restrictive rule of cross-examination, deservedly appear to be numbered." *Id.* at 818 (quoting *United States v. Dillon*, 436 F.2d 1093, 1096 (5th Cir.1971)). The court examined the history surrounding the adoption of

SDCL 19–14–19 and noted that in most instances cross-examination would be limited to subjects covered on direct examination. "However, it is within the discretion of the trial judge to allow questioning into all other relevant matters the same as if on direct examination." *Id.* at 819.

> It is apparent ... that the rule of limited cross-examination ... becomes an aspect of the judge's general control over the mode and order of interrogating witnesses and presenting evidence.... In view of these considerations, the rule is phrased in terms of a suggestion rather than a mandate to the trial judge.

Fed.R.Evid. 611 Advisory Committee Note. (The Advisory Committee Note is from the 1969 Preliminary Draft. 46 FRD 161, 304.)

In the case at bar, the trial judge allowed cross-examination of foundational witnesses in areas of rein maintenance and proper horsemanship. These were relevant matters in the particular case. Therefore, we hold that the trial court did not abuse its discretion in allowing questioning on these matters.

Mark next claims error in that he was denied a fair trial because the trial court failed to maintain control of the trial proceedings. Specifically, Mark argues that Dan, one of the defendants, was harassed and intimidated by Action Company's attorney who represented the other defendant. Mark made no objection at trial concerning this alleged behavior.

Mark alleges violation of SDCL 19–14–18(3) which states: "The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to ... (3) protect witnesses from harassment or undue embarrassment."

There is no indication in the record to suggest that Action Company's attorney harassed or intimidated Dan Kappenman. In fact, Dan was warned that he would be held in contempt of court if he continued *his* belligerent testimony. Dan proved uncooperative at several points during the trial and his unresponsive answers were striken several times.

In the usual case, the order and mode of presentation of evidence and interrogation of witnesses are determined by legal conventions and the parties' choice of trial tactics. The judge ordinarily steps in only when something unusual occurs or when he is asked for a ruling.... Once the judge exercises his power, his decision is virtually immune to attack and will be overturned only in the rare case where the appellate court finds a clear abuse of discretion that seriously damaged a party's right to a fair trial. 3 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 611[01], at 611–14, 15 (1985). The circumstances of this case fail to present any abuse of discretion. In no instance can it be said that Mark's right to a fair trial was seriously damaged.

■■■ Mark next presents a series of arguments based upon incorrect jury instructions. Jury instructions must be considered as a whole in in determining if error was committed in giving or refusing to give certain instructions. *Wheeldon v. Madison*, 374 N.W.2d 367 (S.D.1985). Instructions are adequate if they correctly state the law applicable to the case. *Id.* The burden is upon the complaining party to show the alleged error was prejudicial. *Id.*

■■ Considering the instructions, Mark first contends that the trial court erred when it failed to instruct the jury to find the rein defective under a defective design theory if it was "unreasonably unsafe." Mark would have us adopt an "unreasonably unsafe" standard under a defective design theory and a "unreasonably dangerous" standard under a defective condition theory. In support of this contention, he cites *Moor v. Iowa Mfg. Co.*, 320 N.W.2d 927 (S.D.1982).

The *Moor* case did involve a defective design theory and the court did use the words "unreasonably unsafe" when describing the standard. The court cited two cases immediately after the sentence which used the words "unreasonably unsafe."

Neither one of the cases cited, however, used the words "unreasonably unsafe." *See Shaffer v. Honeywell, Inc.,* 249 N.W.2d 251 (S.D.1976); *Shawver v. Roberts Corp.,* 90 Wis.2d 672, 280 N.W.2d 226 (1979). Indeed, the court in *Shawver* used the precise words "unreasonably dangerous" when describing the standard. We deem the words "dangerous" and "unsafe" to be synonymous. *See* Black's Law Dictionary 355, 1380 (5th ed. 1979). Mark fails to cite any authority to the contrary.

In addition, Mark attempts to distinguish theories based on "defective design" and "defective condition." We believe the proper distinction should be between "defective design" and "defective manufacture." Ultimately, defective condition includes both defective design and defective manufacture. "The fact that the defect relates to *design* rather than *negligent manufacture* makes no difference." *Arbet v. Gussarson,* 66 Wis.2d 551, 556, 225 N.W.2d 431, 435 (Wis.1975) (emphasis in original).

> A product is defective as marketed in the kind of way that makes it unreasonably dangerous for any of the following reasons: (1) A flaw in the product was present in the product at the time the defendant sold it; (2) a failure by the producer or assembler of a product adequately to warn of a risk or hazard related to the way the product was designed; or (3) a defective design.

W. Page Keeton, D. Dobbs, R. Keeton & D. Owen, Prosser & Keeton on Torts § 99, at 695 (5th ed. 1984).

■ Mark next contends that the trial court erred in failing to give his instruction defining misuse. Misuse is a defense which will bar recovery in a strict products liability action. *Smith v. Smith,* 278 N.W.2d 155 (S.D.1979). Mark claims that the court should have instructed that misuse is defined as "the use of a product in a manner or purpose other than for which it was manufactured." He claims without such an instruction the jury could confuse lack of maintenance of the rein with the misuse defense in strict products liability.

■ The trial court refused Mark's proposed independent instruction on misuse and instead relied on South Dakota Pattern Jury Instruction 150.29. That pattern instruction was embodied in the court's Instruction 29 which correctly sets out the law in South Dakota. Specifically, the instruction sets out five elements that must be proven before a cause of action in strict products liability will lie. The fifth element of the instruction states that a manufacturer of a product is liable for damages proximately caused by its product if "the plaintiff user used the product in a manner in which the defendant could reasonably anticipate it would be used." Misuse, by negative implication, would be use of the product in a manner which the defendant could not reasonably anticipate. It is difficult to find where prejudice occurred in this instruction.

■ Mark also contends that the trial court erred in incorrectly giving an instruction on assumption of the risk. Mark relies on *Smith, supra,* contending that the correct assumption of the risk instruction should state assumption of the risk is "conduct of one who is aware the product is defective, knows the defect makes the product unreasonably dangerous, has a reasonable opportunity to elect whether to expose himself to the danger, and nevertheless proceeds to make use of the product." *Smith,* 278 N.W.2d at 161. In Instruction 27 the jury was instructed:

> It is the law that a person cannot be heard to complain of a dangerous condition, situation or conduct when such person with knowledge thereof voluntarily places himself in a position or voluntarily continues in a position wherein he knows of hazard or injury or damage to himself from such dangerous condition, situation or conduct. In such a case, such person is deemed to have assumed the risk of such injury or damage and is not entitled to any recovery for the same.

Both the language in *Smith* and Instruction 27 are predicated upon knowledge of the condition and exposure to the same. Furthermore, the essence of Mark's as-

sumption of the risk instruction was included in Instruction 29. That instruction reads in pertinent part: "A product is not in a defective condition when it is safe for normal use in handling *or when the plaintiff is aware of the condition of which he complains.*" (Emphasis added.) As such, Instruction 27, read in conjunction with the other instructions, cannot be said to be prejudicial to Mark.

Finally, Mark contends that the trial court erred in failing to restrict the application of a contributory negligence instruction to the negligence claim. Basically, he contends that the instruction allowed contributory negligence to improperly become a factor in the strict liability claim. This argument is without merit as the trial court in Instruction 29, which dealt with strict liability, specifically instructed the jury as follows: "If you find liability on the part of the defendant on the grounds just stated, *you shall not consider negligence of the plaintiff* unless you find that his negligence was the sole proximate cause of plaintiff's damages." (Emphasis added.) Therefore, the contributory negligence instruction was properly limited to the issue of negligence and the jury was instructed not to consider it in the strict liability claim.

The judgment of the trial court is affirmed.

HERTZ, Circuit Judge, acting as a Supreme Court Justice, and HECK, Circuit Judge, concur.

FOSHEIM, C.J., and DUNN, Retired Justice, dissent.

DUNN, Retired Justice, sitting for WUEST, J., disqualified.

HECK, Circuit Judge, sitting for HENDERSON, J., disqualified.

This case was argued on November 19, 1985, before RICHARD W. SABERS became a member of this Court on March 1, 1986.

DUNN, Retired Justice (dissenting).

I would respectfully dissent. I am convinced that the jury was hopelessly confused by the manner in which it was generally instructed on the three theories of recovery by the plaintiff.

The evidence does not support the defenses of assumption of risk, contributory negligence or misuse of the strict liability claim against Action Company; yet, the jury was generally instructed on all of these defenses. If the jury were to find that the defective rein was the proximate cause of this accident and injury, the evidence does not support submitting assumption of risk as an affirmative defense. The plaintiff did not know of the defective rein and had no way of discovering it as the defect was covered by a heavy buckle. Likewise, on the defense of misuse, there is no evidence to support an instruction that the defendant is not liable "if the plaintiff user used the product in a manner in which the defendant could [not] reasonably anticipate it would be used." Here the plaintiff used the rein for the very purpose that anyone would anticipate it would be used—that is, to check and control the horse, and even the majority opinion indicates that there was no evidence to support an instruction that would deny recovery if the plaintiff's negligence was the *sole proximate cause of the injury.* The majority maintains that by "negative inference" the jury was instructed not to consider negligence in the strict liability claim. However, all of these instructions were given on defenses that were not available to the defendant under the evidence on a strict liability claim.

The majority relies on the overused statement that "jury instructions must be considered as a whole" and "are adequate if they correctly state the law applicable to the case." Here the instructions, while perhaps accurately stating the law, are used on all theories of recovery and some have no basis in fact in a claim for strict liability. In *Miller v. Baken Park*, 84 S.D. 624, 175 N.W.2d 605 (1970), this Court held that the trial court should instruct only on

the issues which find support in the evidence, and it reversed the case for retrial where the trial court erroneously instructed on assumption of the risk and contributory negligence where the evidence did not support such instructions.

The case should be retried with the jury being instructed separately in each theory of recovery, and no instructions should be given on defenses that find no support in the evidence.

I am authorized to state that FOSHEIM, C.J., joins in this dissent.