138 N.J. Super. 579 (1976)
351 A.2d 787
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
KEITH E. JOHNSON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 16, 1975.
Decided January 22, 1976.
*581 Before Judges LYNCH, LARNER and FULOP.
Mr. G. Robert Wills, Deputy Public Defender, argued the cause for defendant-appellant (Mr. Stanley C. Van Ness, Public Defender, attorney).
Mr. Peter S. Hamerslag, Deputy Attorney General, argued the cause for plaintiff-respondent (Mr. William F. Hyland, Attorney General, attorney).
The opinion of the court was delivered by LARNER, J.A.D.
Defendant was convicted of breaking and entry with intent to rape (N.J.S.A. 2A:94-1) and the substantive crime of rape (N.J.S.A. 2A:138-1), and *582 sentenced to two consecutive indeterminate terms at the Youth Reception and Correction Center.
The appeal from this conviction raises two issues: (1) admissibility of an out-of-court voice identification of defendant and (2) excessiveness of sentence.

VOICE IDENTIFICATION
Although there have been no New Jersey decisions dealing specifically with the application of the law involving visual identification to voice identification, we have no hesitancy in holding that the constitutional safeguards established by the Supreme Court with respect to visual identification are equally applicable to identification of a voice through auditory senses. As to visual identification, see Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). The hazards as to the trustworthiness of eye witness identification are even more apparent where the identification is by voice alone. Inbau, Moenssens & Vitillo, Scientific Police Investigation 136 (1972). Therefore, it is incumbent upon a trial judge to conduct a voir dire proceeding in order to determine whether the out-of-court voice identification was "so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification." Neil v. Biggers, supra, 409 U.S. at 197, 93 S.Ct. at 381, 34 L.Ed.2d at 410. See also Evid. R. 63(1)(c). If it was, the admission of the identification testimony constitutes a denial of due process. Neil v. Biggers, supra; Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).
The mere fact that the identification is by voice alone does not automatically interdict admissibility. Roper v. Beto, 454 F.2d 499 (5 Cir.1972). Testimony by a witness that he recognized a defendant by his voice is generally admissible provided that the witness has an adequate basis for comparison of defendant's voice with the voice which he identifies as that of the accused. Annotation, "Identification of an accused by his voice", 70 A.L.R.2d 995 (1960).
*583 The trial judge did conduct a voir dire hearing and concluded in effect that under the totality of the circumstances relating to the identification there was sufficient degree of reliability to permit its admission in evidence, with its weight to be evaluated by the jury with all the other evidence in the case.
With this background of the controlling legal principles we turn to a review of the operative facts in evidence relating to the identification of defendant by the victim.
Mrs. Coltre was asleep in bed in her home around 7 A.M. on December 7, 1972 when she was awakened by a man's voice and the sensation of something placed over her head. Her head was covered by a piece of clothing so that she could not see the intruder. Through force and threats she was compelled to submit to intercourse with him. He remained in the room for half an hour, carrying on a running conversation on many subjects during the entire period before, during and after the sexual attack.
On the same day, upon interrogation by the police the victim stated that she did not see the assailant so as to identify him visually, but that she could identify his voice if she heard it again. She described the voice which she heard during the half-hour period as that of a negro male, "very calm and soft spoken."
As a result of police investigation defendant was brought to police headquarters for questioning on the very next day. Mrs. Coltre was contacted by telephone and requested to go to the police station. She was told that the police had a possible suspect in custody and she was wanted to determine whether she could identify his voice.
At headquarters, accompanied by her husband, she stood in a room facing an open door leading to another room without being able to look into that room. A detective was in the other room talking to the suspect, the defendant. Mrs. Coltre listened for awhile and hesitated in making an identification while defendant was speaking in a "loud," "angry" and "abusive" manner. When he calmed down and spoke *584 in a normal tone she immediately recognized the voice and identified it as the same voice of the person who attacked her. Her identification was positive. She continued to listen as defendant continued to speak, and reiterated her identification in response to the detective's question, "Are you sure?"
As pointed out in Neil v. Biggers, supra, 409 U.S. at 199, 93 S.Ct. at 382, 34 L.Ed.2d at 411, the factors to be weighed in the context of the totality of the circumstances in considering the reliability of the identification "include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."
In the instant case the opportunity to identify the assailant's voice was extraordinary, extending as it did over a period of half an hour's continuous conversation. The victim was alone in the quiet of the room with the criminal, without the interference of other voices or noises. The witness was tense and intent upon the invasion of her privacy and the intruder who was engaged in the criminal act. She gave an accurate description of his voice to the police within hours of the event. And finally, she made a positive identification of the voice at the time of confrontation one day later while the memory of it was still ringing in her ears. We therefore find that the trial judge's conclusion as to the reliability of the identification is amply supported by the credible evidence. See State v. Bono, 128 N.J. Super. 254, 262 (App. Div.), certif. den. 65 N.J. 572 (1974).
Defendant urges that the show-up at police headquarters when his voice was identified was impermissibly suggestive and therefore unfair because it was conducted on a one-to-one basis and after the victim was informed that she was to listen to the voice of a suspect.
*585 These factors pointed out by defendant do not in themselves dictate a finding of violation of due process. They are merely elements in the total complex of factual circumstances to be considered in arriving at a determination. Pretrial identification has been admitted in evidence in cases where the confrontation was on a one-to-one basis (Stovall v. Denno, supra; State v. Matlack, 49 N.J. 491, cert. den. 389 U.S. 1009, 88 S.Ct. 572, 19 L.Ed.2d 606 (1967); State v. Thomas, 107 N.J. Super. 128 (App. Div. 1969)), and where the identifier was informed that the person to be viewed is a suspect (State v. Mars, 107 N.J. Super. 36 (App. Div. 1969), cert. den. 55 N.J. 319 (1970)). The ultimate question is the effect of the totality of the circumstances; and as already noted we conclude that the overall picture herein points to the absence of infirmity with respect to the reliability of the identification. Hence the identification was properly admitted into evidence, and the suggested factors thereupon became appropriate on the question of the weight to be accorded to the identification by the jury.
The case of Roper v. Beto, supra, is directly in point on all the phases of the identification involved herein. There the charge was also rape, with the victim unable to make a visual identification of her attacker. She also had the opportunity to listen to the suspect talk for some 35 minutes after the rape. Three days after the event the victim was informed that the police had a suspect. She went to police headquarters and identified defendant's voice by listening through an open door. Her identification was clear and "strong."
The Circuit Court of Appeals reversed the grant of habeas corpus by the United States District Court, holding that the foregoing identification testimony "was not so impermissibly suggestive as to give rise to a substantial likelihood of misidentification." Roper v. Beto, supra, 454 F.2d at 503.
Defendant cites for a contrary view Palmer v. Peyton, 359 F.2d 199 (4 Cir. 1966), wherein the court reversed a conviction based upon a finding that the admission of a voice *586 identification under the circumstances therein constituted a denial of due process. We consider Palmer to be readily distinguishable from the instant case.
There, also, the rape victim could only identify her assailant by his voice. However, during the criminal event the victim's child was screaming. Following the attack the victim was able to recall very little about the criminal except that he was a negro, that he wore an orange-colored sport shirt, that he had been drinking, and that he spoke with a "high, childlike voice."
When she was brought to headquarters a few hours later to view a lineup of four or five negroes and to test her ability to recognize voices she could make no identification. The next day she identified defendant's voice through an open door, but only after being told that the police had a negro suspect in custody and being shown the suspect's shirt, which was the same color as that of her assailant. In addition, the suspect was induced to repeat certain phrases and "damning words" uttered by the attacker. At the time of confrontation the suspect did not have a clothespin bag fitting snugly over his head, although the bag was in the possession of the police and was on the attacker's head during the rape, muffling his voice.
It was on the totality of the foregoing circumstances that the court concluded that the confrontation procedure failed to meet "`those canons of decency and fairness' established as part of the fundamental law of the land." Palmer v. Peyton, supra, 359 F.2d at 202. The several additional features of suggestibility in the police procedures there spell out the substantial distinction in the totality of the circumstances between that case and the instant case.
In essence, the evaluation of the facts involves an analysis of the degree of reliability. Suggestibility in itself is not fatal. Neil v. Biggers, supra, 409 U.S. at 199, 93 S.Ct. at 382, 34 L.Ed.2d at 411. It is only when that suggestibility in confrontation reaches impermissible or unfair limits that the pendulum swings to a finding of unreliability.
*587 Although the existence of other evidence pointing to guilt is not an appropriate yardstick for determining the propriety of admitting the voice identification testimony, nevertheless our examination of the trial record reveals a substantial circumstantial case connecting defendant with the commission of the crime.

SENTENCE
We have considered the sentence imposed by the court in the light of defendant's past record and the nature of the offense involved herein. The presentence report reflects several involvements as a juvenile in serious violent offenses with custodial sentences to various State institutions. In fact, the crime involved in this case arose while defendant was on work release from the Yardville Youth Reception and Correction Center. His behavior throughout most of his life has been anti-social. The public is entitled to protection from the potential dangers of such an individual at liberty.
The judge took defendant's youth into consideration in sentencing him to the Youth Reception Center rather than State Prison. The indeterminate sentences to that institution permit substantial flexibility as to time of release, within the discretionary judgment of the governing body, while the consecutive sentences properly demonstrate the trial judge's view of the seriousness of the offense and the danger of early release.
We cannot say under the foregoing circumstances that the consecutive indeterminate sentences imposed herein constitute an abuse of discretion.
Judgment affirmed.