STATE of South Dakota, Plaintiff and Respondent,

v.

William Joseph RURUP, Defendant and Appellant.

No. 12465.

Supreme Court of South Dakota.

Argued Nov. 17, 1978.

Decided Dec. 27, 1978.

B. Elizabeth Godtland Ganje, Asst. Atty. Gen., Pierre, for plaintiff and respondent; William J. Janklow, Atty. Gen., Harry W. Christianson, Chief Asst. Atty. Gen., Pierre, on the brief.

Bruce A. Hubbard of Morrill, Hansen & Hubbard, Sturgis, for defendant and appellant.

WOLLMAN, Chief Justice.

Appellant was found guilty by a jury of two counts of assault by a deadly weapon and two counts of criminal damage to property. He was sentenced to eight years on each count, the sentences to run concurrently. Appellant was sixteen years of age at the time of trial. He appeals from the sentence and judgment of the court and the order certifying waiver of juvenile jurisdiction and transfer of child for criminal proceedings. We affirm.

On September 7, 1977, appellant and a juvenile companion escaped from the Lawrence County jail, stole a pickup truck and set out for Rapid City. A police officer observed appellant failing to obey a stop sign and attempted to effect an arrest. Appellant did not stop when the police officer turned on his red lights and sounded his siren. A high speed chase ensued. Eventually, three other police vehicles joined the chase. When appellant reached Interstate 90, he turned north toward Sturgis and the speed of the chase climbed to approximately ninety miles per hour. Having been alerted by radio, other police officers set up a roadblock on the northbound lane of Interstate 90. The roadblock consisted of four vehicles belonging to various law enforcement agencies. Officers on the scene testified that appellant increased his speed as his vehicle approached the roadblock. The stolen pickup truck collided with three of the vehicles in the roadblock. Two of these vehicles were totally destroyed. Three of the officers manning the roadblock were injured in the crash. One of the officers received critical injuries in the incident, while another sustained a serious injury to his leg. In addition, the stolen pickup was totally demolished. Neither appellant nor his companion received any injuries.

Appellant asserts two errors in connection with the transfer hearing that resulted in his being tried as an adult.[1] First, appellant asserts that the court committed error in allowing an employee of the Minnesota Department of Corrections to

---

1. An order of transfer is not appealable as of right; however, the proceeding will be reviewed following a guilty verdict in the circuit court. *People in Interest of L.V.A.*, S.D., 248 N.W.2d 864; *People in Interest of D.M.L.*, S.D., 254 N.W.2d 457; SDCL 26–11–4.

testify about appellant's prior juvenile record. The witness admitted that he had no firsthand knowledge of appellant's juvenile record and that the information he was relating was gleaned from records of the Minnesota Department of Corrections that had been prepared by someone other than the witness. The court allowed the information into evidence under the business records exception to the hearsay rule. The records in question were never introduced as evidence. Assuming that the testimony was inadmissible hearsay, the substance of this information was properly received by the court from other sources.[2] The testimony of the witness was cumulative and repetitive and accordingly was not prejudicial to appellant and must be considered harmless error. SDCL 23–1–2; *Matter of D.T.,* S.D., 237 N.W.2d 166; *State v. Ballard,* 72 S.D. 293, 33 N.W.2d 339; *State v. Reddington,* 80 S.D. 390, 125 N.W.2d 58.

▪ Second, appellant contends that the court erred in waiving juvenile jurisdiction and in transferring appellant to the circuit court to stand trial as an adult.

Appellant contends that although SDCL 26–11–4 mandates that the court must consider the best interests of the child as well as society, the court here neglected to consider the welfare of the appellant and considered only the welfare of society. SDCL 26–11–4 establishes, *inter alia,* the standard of review that must be applied in this court. We may not set aside the trial court's findings of fact unless those findings are clearly erroneous. The record in this case fully supports the findings made by the trial court. Detailed findings were made concerning each of the seven factors to be considered in a transfer hearing identified in SDCL 26–11–4. One of these factors is set forth in SDCL 26–11–4(7), which provides:

(7) The prospect for adequate protection of the public and the likelihood of reasonable rehabilitation of the juvenile, if he is found to have committed the alleged offense, by the use of procedures, services and facilities currently available to the juvenile court.

Extensive testimony was taken from two highly qualified psychiatrists and from oth-

2. For example Dr. Ronald D. Franks' report states in part:

Of particular note has been William's extensive time in institutions beginning in 1974 when he was sent to Wilmer State Hospital due to his mother's inability to control him. Although initially to be for a period of three months, due to frequent runaways, stealing of cars and uncontrolled behavior while at Wilmer, his length of stay lasted 1½ years. Within several months after his discharge, he was placed in McCrossan's Boys' Ranch for ten months for a car theft. He again ran away from this institution and stole cars during the time that he was absent. After discharge from McCrossan's he was placed in a group home, subsequently to a hospital, back to a group home and eventually to Minnesota Home School in Sauk Center, Minnesota, up until July 23, 1977. William has thus been in institutions for all but three months of the last three years. He describes none of these institutions as helping him in any significant way . . . ..

In detailing the events leading up to the alleged offense William described having returned from Minnesota Home School at the end of July 1977 to live with his mother and stepfather and stepbrother, [J.D.]. During

the month of August William describes he and [J.D.] smoking marijuana nearly daily and the two of them burglarizing two houses during that month to pay for their marijuana. When school started, neither William nor [J.D.] attended class and over the first four days stole two pickups and a station wagon as well as several razors from a barber shop. William describes that when he was about to be arrested for this, that he and [J.D.] attempted to run away by stealing a car and breaking into a house. While there William stole a handgun. They were later picked up by the police and placed in jail. In several days William described how he and [J.D.] were able to break out of jail and steal a pickup. William was driving the pickup and described filling up at a gas station and then leaving before paying, subsequently changing the license plates on the pickup so that it would be less likely to be recognized and later that evening running a stop sign. This led to a policeman attempting to pull them over, at which point William stated that he was going to try and outrun the policeman. This resulted in a chase at speeds greater than one hundred miles per hour, much of it occurring on the Interstate Highway near Sturgis.

ers concerning this factor, which is directed towards the best interests of the child. Appellant's past history clearly shows that the types of rehabilitation programs available to the juvenile court in South Dakota have not been successful in dealing with appellant. Both psychiatrists testified that the types of programs available to the juvenile court in South Dakota were not suited to appellant's needs. They both agreed that appellant particularly needs one-to-one psychiatric therapy to assist him in resolving the conflicts in his personality that produce his negative self-image and extreme antisocial behavior. The witnesses also agreed that appellant needs vocational training.[3] We see nothing in the record of this transfer hearing that indicates anything less than scrupulous attention to the command and spirit of the statute. The record indicates that past treatment of appellant in the less structured environments found in juvenile correctional facilities has not been successful due primarily to appellant's lack of motivation.

Finally, appellant contends that the trial court erred in refusing to grant his motion for a change of venue and that such refusal denied him the right to a fair trial. Attached to appellant's affidavit in support of his motion for change of venue were some sixteen accounts from area newspapers concerning the events in this case. These accounts were printed in the newspapers over a period of four months preceding the January 1978 trial. More than half of them appeared in September, some five months prior to trial. Appellant contended to the trial court that because the stories indicated that area taxpayers would have to replace more than $10,000 in damaged law enforcement equipment and because two area policemen were injured, the stories would particularly inflame the citizens and result in a biased jury. Examination of these newspaper articles reveals that only two of the articles identify appellant by name, and the articles generally report, without undue emotion, the events leading up to and following the spectacular crash at the roadblock. Appellant presented no evidence that there was any particular prejudice against him in the community. In *State v. Means,* S.D., 268 N.W.2d 802, we rejected the notion that evidence of extensive publicity prior to trial will justify an assumption that the prospective jurors are in fact prejudiced. We held that "a clear nexus between community feeling and jury feeling must be shown in order to justify reversal of the case." 268 N.W.2d at 810. See also *State v. Kingston,* 84 S.D. 578, 174 N.W.2d 636; *State v. Austin,* 84 S.D. 405, 172 N.W.2d 284; *State v. Meservey,* 53 S.D. 60, 220 N.W. 139. Appellant has failed to show undue prejudice concerning this case in the community. Accordingly, his contention must be rejected.

We affirm the conviction and judgment appealed from.

All the Justices concur.

---

3. In this regard, it is instructive to note that the adult criminal system has succeeded in providing for appellant the very treatment both psychiatrists at the transfer hearing testified that appellant needs. The sentence of the trial court included the following orders:

It is the further ORDER of this Court that because the Court feels the defendant is in need of psychiatric treatment, that defendant receive one to one psychiatric therapy.

It is further ORDERED that based upon treatment received by defendant and his progress and if the Board of Pardons sees fit, that defendant receive some vocational training to prepare defendant for possible work release program.