STATE of South Dakota, Plaintiff and Appellee,

v.

Brian PHINNEY, Defendant and Appellant.

No. 14308.

Supreme Court of South Dakota.

Argued March 21, 1984.

Decided May 9, 1984.

Jeffrey P. Hallem, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

James D. Taylor of Tinan, Padrnos, Smith & Saukerson, Mitchell, for defendant and appellant.

HENDERSON, Justice.

### HISTORY OF ACTION

This is a criminal appeal from the denial of a motion to suppress and a judgment of conviction for unlawful telephone calls entered by the Circuit Court, Fourth Judicial Circuit, on August 2, 1983. We affirm.

Appellant Brian Phinney was prosecuted for violation of SDCL 49–31–31, which forbids a variety of unlawful telephone calls, the information being filed May 6, 1983. A motion to suppress certain telephone identification procedures was filed on June 13, 1983. The motion was denied, the circuit court concluding that the identification was

"not impermissibly suggestive." Trial by jury was waived, and the case was tried to the circuit court. Phinney was found guilty and sentenced to 90 days in jail, 60 days suspended upon certain conditions.

## FACTS

On March 24, 1983, Terri Ann Kowall received an obscene phone call at 1:05 a.m. Prior to that time, and because of previous such calls, she had the telephone company place a "trap" on her phone line. Upon receiving the March 24 call, she contacted Detective Reinesch, Mitchell Police Department, informing him of the call. Reinesch discovered from the telephone records that the call was placed from a phone number listed in the name of Charles Jacobs, Fulton, South Dakota. Later that day, Reinesch called this number from the Mitchell Police Department, with Mrs. Kowall listening on an adjoining line for the purpose of voice identification. Detective Reinesch spoke with several individuals, identified himself to each and asked if they had made a phone call during the early morning hours of March 24, 1983.

During this procedure, Mrs. Kowall identified the voice of appellant, Brian Phinney, as the one who made the unlawful phone call that morning in March.

## ISSUES

### I.

WERE THE CIRCUMSTANCES SURROUNDING THE INDENTIFICATION OF APPELLANT'S VOICE BY COMPLAINING WITNESS KOWALL SO IMPERMISSIBLY SUGGESTIVE AS TO TAINT THE IDENTIFICATION AND RENDER IT SUBJECT TO THE MOTION TO SUPPRESS?

### II.

WAS THE EVIDENCE ADDUCED AT TRIAL SUFFICIENT TO SUPPORT THE COURT'S FINDING OF GUILT?

## DECISION

### I.

Identification of an accused in a criminal setting is an area fraught with potential danger. There is, inherent in every such identification, the risk that a witness may be mistaken. This risk often rises to an even greater level at a staged confrontation. A confrontation which is overly suggestive may tend to focus so much on an individual as to remove any alternative, but identification. To protect an accused and safeguard against possible abuses of identification, the United States Supreme Court has historically developed a standard for testing their admissibility as evidence against an accused.

■ With regard to pretrial identification procedures, the totality of the circumstances surrounding the procedure must be examined in testing the reliability of the identification. *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). The United States Supreme Court, in *Stovall*, early set forth a "per se" rule of inadmissibility, based solely on whether, under the circumstances, the procedure was overly suggestive. If yes, the identification was inadmissible.

The Supreme Court later took note that "[s]uggestive confrontations are disapproved because they increase the likelihood of misidentification," and that it is this likelihood which violates a defendant's right to due process. *Neil v. Biggers*, 409 U.S. 188, 198, 93 S.Ct. 375, 382, 34 L.Ed.2d 401, 411 (1972). Thus, the rule became, not merely was the procedure suggestive, but whether "under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." 409 U.S. at 199, 93 S.Ct. at 382.

> [T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Id.* at 199, 93 S.Ct. at 382. "[R]eliability is the linchpin in determining the admissibility of identification testimony ...." *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140, 154 (1977). Against the above factors "is to be weighed the corrupting effect of the suggestive identification itself." *Id.*

▇ This Court has followed the above lead in holding "that in-court identifications are not admissible at trial when they stem from [an] ... identification ... procedure that is so impermissibly suggestive as to result in a very substantial likelihood of irreparable misidentification." *State v. Iron Thunder*, 272 N.W.2d 299, 301 (S.D. 1978). This result is the primary evil to be avoided. *State v. Reiman*, 284 N.W.2d 860 (S.D.1979). "Whether an identification procedure is so suggestive as to deny due process must be determined from the totality of the circumstances." *State v. Dace*, 333 N.W.2d 812, 821 (S.D.1983). Further, though this Court has not had an opportunity to so hold, there is no reason why the rules established with regard to visual identification should not be every bit as pertinent and equally applicable to voice identifications. *See United States v. Pheaster*, 544 F.2d 353 (9th Cir.1976); *State v. Johnson*, 138 N.J.Super. 579, 351 A.2d 787 (1976); *Harris v. State*, 268 Ind. 12, 373 N.E.2d 149 (1978); and *State v. Pendergrass*, 179 Mont. 106, 586 P.2d 691 (1978).

▇ Though the identification procedure herein may have been suggestive, we do not find, under the totality of the circumstances, that it was impermissibly or unnecessarily so.

Upon receiving the information from the phone company, Detective Reinesch contacted Mrs. Kowall and requested she come down to the station to see if she could identify some voices. Reinesch testified he informed Mrs. Kowall that he had obtained a number from the phone company. He did not tell her he had a suspect. Mrs. Kowall testified that she merely assumed a number had been found; no one actually informed her they would be calling a particular number.

At any rate, at the station, Reinesch dialed a number and identified himself to Colleen Jacobs, who answered the line. He informed her that a call had been made from that number at a certain date and time and asked if she had made such a call. Upon discovering there were other adults in the house, Reinesch asked to speak to Charles Jacobs and Brian Phinney. Prior to this call, Reinesch did not know how many people were in the house.

Charles Jacobs was the first on the line. Mrs. Kowall, in the same room as Reinesch, listened to this conversation on the same phone receiver. She indicated immediately that she did not recognize this voice. Because Reinesch indicated it would make listening easier, Mrs. Kowall then went into an adjoining office and picked up an extension.

Brian Phinney was called to the phone. Reinesch asked if he had made any calls at the time in question, to which he responded in the negative. Reinesch then told Phinney that he would probably be getting a hold of him later that day, should he need to speak with him again.

After hanging up and joining Reinesch in the next room, Mrs. Kowall identified Brian Phinney as her caller. The entire phone identification procedure lasted a few minutes.

The voice identification procedure at issue here is one of first impression in South Dakota. However, similar situations have arisen in other jurisdictions. For example, in *Le Blanc v. State*, 441 S.W.2d 847 (Tex. Cr.App.1969), a couple had been receiving phone calls in which profane language was used. A reverse polarization trap placed on their phone traced one such call made to husband. The next morning, husband and wife were called to the police station and advised by the police sergeant that he had the number from which the traced call was made. The sergeant told them the number and the name of the party to whom it was listed. He then asked wife to dial the number and talk to Le Blanc. Husband

listened on an extension and identified the voice as that of the caller the night before. The Texas Court of Criminal Appeals upheld this identification procedure as not being violative of due process.

Alabama has also upheld such a procedure. After receipt of a threatening phone call and upon a phone company trace of the call, by means of a "trap," the police in *Babies v. State*, 56 Ala.App. 37, 318 So.2d 777 (1975), went to the residence from which the call was traced. Two brothers were subsequently taken to the police station. The complaining party was told that the suspects would be put on the phone one at a time. The party was asked to determine if he recognized anyone's voice. The party had no knowledge of which brother would be put on first. The Court held that the "police operated in a permissible manner in their investigation and subsequent establishment of appellant's identification," taking into account that the officers knew a phone "trap" had been placed and that the reliability of the trace had been established at trial. *Babies*, 318 So.2d at 781.

■ In light of these supporting cases, it cannot be said that Detective Reinesch acted impermissibly. Appellant places a great deal of emphasis on two Ninth Circuit cases for the proposition that admission of a suggestive procedure may be justified only by exigent circumstances, not present in the case at bar. However, it was not a finding of exigency but of ultimate reliability, the standard for testing admissibility, which determined those cases. Further, though Reinesch might have arranged the identification in a better fashion, as stated in *United States v. Pheaster*, 544 F.2d 353, 370 (9th Cir.1976), "the issue before us is not whether a better procedure was available, but whether the procedure used, under all the circumstances, was constitutionally defective."

■ Even if it may be found that Reinesch tainted this identification with suggestibility, the identification still merits admission under the reliability factors set forth in *Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401.

1) Opportunity of the witness to view the criminal at the time of the crime:

Mrs. Kowall had received five such phone cals, all from the same caller, in a six-week period. Although the length of these calls varied, the last, of which appellant was charged, lasted five minutes. There was an adequate opportunity to "view" or become familiar with the voice of the caller.

2) The witness' degree of attention:

Mrs. Kowall did testify that she did not always give these phone calls her full attention. Understandably so. These calls were an annoyance. However, the call on March 24 lasted five minutes. Mrs. Kowall knew the "trap" was being used and deliberately kept the caller on the line in order to trace the call. This conversation had her full attention.

3) The accuracy of the witness' prior description of the criminal:

The caller's voice was described as that belonging to a young male. It was a raspy voice, spoken in a whisper. The caller was also described as saying "yeah" a lot. In addition to the sound of the voice, it was the use of "yeah" which clinched the identification for Mrs. Kowall.

4) The level of certainty demonstrated by the witness at the confrontation:

Appellant argues there was "no ringing announcement" of recognition by Mrs. Kowall. Certainly, this was not necessary. Mrs. Kowall clearly, and without hesitation, identified the voice of Phinney.

5) The length of time between the crime and the confrontation:

Cases have upheld time frames of as much as two days between commission of a crime and identification. *See Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140. In the instant case, Mrs. Kowall received the phone call at 1:05 a.m. on March 24, 1983, and made her identification less than ten hours later, that same day.

We do not decide whether a better procedure could have been used, but whether the one used was so marked with suggestibility and unreliability as to result in mistaken identity. Under these facts, we cannot so hold.

## II.

■ Appellant contends the evidence is insufficient to support a finding of guilt.

In determining the sufficiency of the evidence on appeal, the question presented is whether or not there is evidence in the record which, if believed by the jury, is sufficient to sustain a finding of guilt beyond a reasonable doubt. In making such a determination, this Court will accept that evidence, and the most favorable inferences that can be fairly drawn therefrom, which will support the verdict.

*State v. Jorgensen*, 333 N.W.2d 725, 728 (S.D.1983) (citations omitted). Further, the credibility of witnesses and weight to be accorded their testimony and the weight of the evidence is for the trial court to determine. *See State v. Minkel*, 89 S.D. 144, 230 N.W.2d 233 (1975).

■ The only call in question was that placed on March 24, 1983. A telephone company "trap" traced that call to the Jacobs' residence. The accuracy of the phone company's equipment was never placed in issue. Donald Remund, the telephone company employee who set up the electronic trace, testified that in his 33 years with the phone company he has never had a trap prove inaccurate. Mrs. Kowall identified the voice of her caller as that of a male, and of the two males in the Jacobs' residence, recognized the voice of Phinney. The circumstances surrounding that identification do not render it unreliable. Further, evidence showed that Phinney remained awake after the Jacobs family had retired on the evening in question. Phinney, a brother of Colleen Jacobs, made his home with the Jacobs family, and had access to the family phone. There were no guests in the Jacobs' home that evening at 1:05 a.m. Only Charles Jacobs, Colleen Jacobs, their three small children, and Phinney were in the Jacobs' home that evening and both Charles and Colleen Jacobs testified at trial that they did not make any calls in the early morning hours of March 24, 1983.

The scientific evidence pinpointed the origin of the obscene calls. Other evidence indicated that defendant was the only person who could have been ... [where] the calls were made when they were made. Evaluation of that evidence and of the credibility of defendant's testimony ... was for the trial judge as the finder of the facts. There is no warrant for our disturbing those findings since they are fully supported by the record. *State v. Hibbs*, 123 N.J.Super. 124, 126, 301 A.2d 775, 776 (1973). The trial judge could find, given these circumstances, guilt beyond a reasonable doubt. We therefore affirm the conviction.

All the Justices concur.