STATE of South Dakota, Plaintiff
and Appellee,

v.

Randy DAVIS, Defendant and
Appellant.

No. 15335.

Supreme Court of South Dakota.

Considered on Briefs Jan. 15, 1987.

Decided March 4, 1987.

Janine Kern, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Randy Davis, pro se.

WUEST, Chief Justice.

Defendant appeals pro se his conviction on a charge of grand theft of property exceeding $200.00 in value. SDCL 22–30A–1 and –17. We affirm.

Defendant, Randy Davis, was an employee of Fast, Inc., a railroad salvaging business in Lawrence County. After he sustained an injury in early June, 1985, defendant was only able to work sporadically salvaging railroad ties. Later that month, defendant did not report to work one day because of his injury. Defendant learned, however, that his employment had been terminated by a co-owner of the company, Jon Trembath. The defendant went to the salvaging area the next day in order to speak with Trembath, but Trembath had left town for several days. The defendant stayed at the salvaging area even though he was no longer employed there.

Midge Montgomery (Montgomery), an area resident, contacted Fast, Inc. to obtain railroad ties for a landscaping project. They told her she could obtain railroad ties at the Fast, Inc. job site near Rochford. Montgomery met the defendant when she arrived at the job site. Montgomery assumed the defendant was a company employee, and she ordered her railroad ties from him. Defendant stated that when he delivered the ties to Montgomery she should write a check payable to Randy Davis.

On the day scheduled for delivery, Montgomery sent two men who were working on her landscaping project to pick up the ties. After Montgomery's workmen and a friend of defendant's had finished loading the ties, defendant received Montgomery's check for $160.00, which he cashed later that day.

A few weeks later, Montgomery telephoned Fast, Inc. to purchase more railroad ties. Brenda Trembath, a secretary for Fast, Inc., was unable to locate any record of an earlier sale. When asked about the first delivery that she had received, Montgomery told Trembath she had purchased forty ties and had made payment to Randy Davis. Trembath immediately went to inspect the ties. Although the ties had been used to construct a retaining wall, Trembath determined that the ties were the best quality softwood ties that normally sold for between six and eight dollars.

The first issue is whether there was sufficient evidence for the jury to find that the railroad ties defendant sold to Montgomery were valued at $200.00 or more. This court has held that determining the value of allegedly stolen property is within the province of the jury. *State v. Jacquith*, 272 N.W.2d 90, 92 (1978). The test for determining the value of the property in question is the "fair market value" test. The test provides that the value which must be established is the fair market value at the time and place of the theft. *Jacquith, supra; State v. Quinn*, 286 N.W.2d 320 (1979).

In determining the sufficiency of the evidence on appeal in a criminal case the issue before this court is whether there is evidence in the record which, if believed by the jury, is sufficient to sustain a finding of guilt beyond a reasonable doubt. "[I]n making such a determination this Court will accept that evidence and the most reasonable inferences that can be fairly drawn therefrom, which will support the verdict." *State v. Dale*, 379 N.W.2d 811, 814 (S.D. 1985); *State v. Faehnrich*, 359 N.W.2d 895

(S.D.1984); *State v. McCafferty,* 356 N.W.2d 159 (S.D.1984); *State v. Phinney,* 348 N.W.2d 466 (S.D.1984); *State v. West,* 344 N.W.2d 502 (S.D.1984); *State v. Jorgensen,* 333 N.W.2d 725 (S.D.1983). We will uphold the jury's verdict if the evidence and the reasonable inferences drawn therefrom sustain a rational theory of guilt. *Faehrich, supra; McCafferty, supra.*

At trial Brenda Trembath testified that her husband first began salvaging railroad ties in May of 1981. On many occasions she had graded ties to determine their value. Trembath testified that she examined the stolen ties that were built into the retaining wall at the Montgomery residence. She determined that they were number one softwood ties valued at a minimum of $6.00 to $7.00 apiece and that they were of such good quality that she believed the ties to be $8.00 handpicked ties. Moreover, Trembath stated that she was able to determine the quality and composition of the ties notwithstanding their being used to make the retaining wall. Defendant himself presented the jury with evidence that the ties were worth six dollars each. On cross-examination he admitted that the fellow employee who loaded the ties told him Montgomery was given "number one soft" ties.

▇▇▇ Even if Trembath cannot be considered an expert in the valuation of railroad ties, opinion testimony of the owner of stolen goods, not otherwise an expert, is admissible to establish the value of said stolen goods. *United States v. McGinnis,* 783 F.2d 755 (8th Cir.1986). In *McGinnis,* the Eighth Circuit held that the testimony of an owner of goods, not otherwise an expert, was admissible to establish that the goods had a value sufficient to make the offense punishable under the elements required by statute (18 U.S.C. 2315). The Court further held that such testimony was sufficient without more to support the jury's determination of value. Based on the value placed on the ties by Trembath, whose credibility was a question for the jury, the jury could certainly determine the probable fair market value of the ties taken by defendant.

Defendant contends that evidence establishing the number of ties taken was inadmissible hearsay. The defendant argues therefore that there was not sufficient evidence to establish that the total value of the property stolen exceeded $200.00.

At trial, Montgomery testified about her purchase of railroad ties from defendant but she could not remember the exact number of ties she ordered or the exact price she paid. She did testify, however, that when she later phoned Fast, Inc. to purchase additional ties, she told Trembath the number of ties she had previously ordered. In order to surmount the problem of Montgomery's memory lapse, the State called Trembath to testify about the telephone conversation with Montgomery. Trembath testified that Montgomery told her she had previously purchased forty railroad ties from defendant. The defendant raised a hearsay objection which the trial court overruled.

Although, Trembath's testimony concerning Montgomery's statement was hearsay, the trial court overruled defendant's objection without ruling on its admissibility under any of the hearsay exceptions. The State does not dispute the hearsay character of this evidence, but argues that its introduction was harmless error because other evidence in the record indicated there were forty ties.

The defendant argues that this hearsay testimony was inadmissible under the residual hearsay exception of SDCL 19–16–35. SDCL 19–16–35 provides:

A statement not specifically covered by any of §§ 19–16–30 to 19–16–34, inclusive, but having equivalent circumstantial guarantees of trustworthiness, is not excluded by § 19–16–4 if the declarant is unavailable as a witness and if the court determines that

(1) the statement is offered as evidence of a material fact;

(2) the statement is more probative on the point for which it is offered than any other evidence which the propo-

nent can procure through reasonable efforts; and

(3) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

However, a statement may not be admitted under this section unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

Defendant concedes that Montgomery was unavailable as a witness due to a lack of memory. SDCL 19–16–29(3). Defendant also concedes the statement was offered as evidence of a material fact. However, defendant alleges that this hearsay testimony was inadmissible under SDCL 19–16–35 because the court did not rule on the reliability of the statements on the record, outside the presence of the jury and because the State did not give defense counsel notice of its intention to use this testimony. Defendant argues that introduction of the evidence was prejudicial error because the other evidence was insufficient to support the guilty verdict. Moreover, allowing the testimony violated the statutory requirements of the residual hearsay exception as well as the confrontation clause of our state constitution and the Sixth and Fourteenth Amendments to the United States Constitution.

■ When a hearsay declarant is not present for cross-examination at trial, the confrontation clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears "adequate indicia of reliability." Reliability can be inferred where the evidence falls within a firmly rooted hearsay exception. Otherwise, the confrontation clause requires evidence to be excluded, unless there is a showing of particularized guarantees of trustworthiness. *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597, 608 (1980).

■ Besides Trembath's testimony about Montgomery's statement, there was other evidence at trial that defendant took forty ties. This other evidence corroborated the hearsay testimony and supplied it with necessary circumstantial guarantees of trustworthiness. Defendant was asked on cross-examination what price he had quoted Montgomery for the sale of the ties. He replied "$4.00 apiece." Montgomery's check to Davis was for $160.00. It is only a matter of simple arithmetic to arrive at the conclusion that the $160.00 sum defendant received from Montgomery was payment for forty railroad ties. Also, defendant made restitution to Trembath for the ties. Trembath said they were worth six dollars each, and defendant paid Trembath $240.00. When asked if he paid $240.00 to Trembath for the sale of ties to Montgomery, defendant replied, "$6.00 a tie times for, [sic] yea, two forty."

We have stated that "circumstantial guarantees of trustworthiness" under the residual exception to the hearsay rule is synonymous with "indicia of reliability" required under the confrontation clause test in *Ohio v. Roberts, supra. State v. McCafferty*, 356 N.W.2d 159 (S.D.1984). The other evidence at trial that defendant took forty ties corroborated the hearsay testimony and supplied it with circumstantial guarantees of trustworthiness, thereby concurrently supplying the indicia of reliability for constitutional confrontation purposes.

Although the issue was briefly discussed in *McCafferty, supra,* we do not believe that we are forced to decide whether the failure to give notice of the intent to use the hearsay did not meet the confrontation requirements under *Ohio v. Roberts.* The defendant does not cite authority on this area. Therefore, the remaining issue for this court is whether the trial court's failure to determine trustworthiness or the State's failure to give notice, as required by SDCL 19–16–35, should be considered prejudicial error. *See State v. Traversie,* 387 N.W.2d 2 (S.D.1986). In answering this question we must remember that South Dakota's harmless error statute em-

phasizes "substantial rights." SDCL 23A–44–14.

■ Application of harmless error is a state question where it involves only errors of state procedure or state law. Therefore, we will apply our harmless error standard rather than the federal test. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *State v. Dokken,* 385 N.W.2d 493 (S.D.1986); *State v. Remacle,* 386 N.W.2d 38 (S.D.1986) (Henderson, J., dissenting).

In applying the harmless error test, we have developed two lines of cases describing the harmless error standard. One test of harmless error could be called the "different verdict" standard. "To show such prejudicial error an appellant must establish affirmatively from the record that under the evidence, the jury might and *probably would have returned a different verdict if* the alleged error had not occurred." *Dwyer v. Christensen,* 77 S.D. 381, 385, 92 N.W.2d 199, 202 (1958). *See also People in Interest of H.L., Jr.,* 386 N.W.2d 495, 498 (S.D.1986); *Matter of S.L.,* 349 N.W.2d 428, 433 (S.D.1984); *State v. Hoadley,* 319 N.W.2d 505, 507 (S.D.1982); *Lytle v. Morgan,* 270 N.W.2d 359, 362 (S.D.1978). (citations omitted) (emphasis ours). Another test for harmless error asks whether the error had "some effect" on the verdict.

> Prejudicial error is such error as in all probability must have *produced some effect* upon the final result of the trial, namely, the verdict of the jury. Prejudicial error is error which affects the final result and is harmful to the substantial rights of the party assigning it. (citations omitted) (emphasis ours).

*State v. Reddington,* 80 S.D. 390, 125 N.W.2d 58, 62 (1963). *See also State v. Remacle,* 386 N.W.2d 38, 41 (S.D.1986); *State v. Dokken,* 385 N.W.2d 493, 499 (S.D. 1986); *State v. Waller,* 338 N.W.2d 288 (S.D.1983) (citing *Reddington* but applying the *Dwyer* standard, i.e., probable that there would have been a different verdict);

*State v. Rurup,* 272 N.W.2d 821 (1978) (harmless because evidence was cumulative); *State v. Beene,* 257 N.W.2d 589 (S.D. 1977); *State Highway Commission v. Beets,* 88 S.D. 536, 224 N.W.2d 567 (1974); *State v. Myers,* 88 S.D. 378, 220 N.W.2d 535 (1974).

These standards are different. Obviously, under *Reddington,* a lesser burden is placed on the appellant because almost any erroneous admission or exclusion of evidence would have *some effect* upon the verdict and therefore be prejudicial. Under *Dwyer,* only if the erroneous admission or exclusion of the evidence probably resulted in a *different verdict* would the error be prejudicial.

Here, the hearsay evidence was cumulative because other evidence established the number of ties taken, but whether it was prejudicial depends on which standard we use. It is arguably prejudicial under either standard. But it is not helpful for us to declare that "whether error is prejudicial must be determined on the basis of the facts in any given case." *See Remacle, supra.* We need a certain standard.

■ We believe the correct test should recognize fairness at trial for the defendant and whether his substantial rights were prejudiced. We now abandon the "some effect" test and hold that prejudicial error occurs when the appellant establishes that under the evidence the jury might and probably would have returned a *different verdict* if the alleged error had not occurred.[1] Unless such a different result probably would have occurred, then the substantial rights of the parties were not prejudiced. Even if Trembath's testimony concerning Montgomery's statement were found to be inadmissible hearsay, the evidence was at most cumulative and therefore constituted harmless error.

Defendant raises six instances in which he feels his counsel's assistance was so deficient that he was denied the effective

---

1. We do not address a similar dichotomy in the tests for prejudicial error occurring in our civil cases. See *Ryken v. Blumer,* 307 N.W.2d 865 (S.D.1981); *Koupal v. Anton, Inc. v. Wiezorek,* 375 N.W.2d 639 (S.D.1985).

assistance of counsel guaranteed by the Sixth Amendment. We believe that these allegations are better reviewed upon petition for habeas corpus. In *State v. Anderson*, 387 N.W.2d 544, 545 (S.D.1986), we stated:

> This court has repeatedly held that habeas corpus (formerly post-conviction) relief is the preferable means to present an allegation of ineffective assistance of counsel. *State v. Hammond*, 357 N.W.2d 278 (S.D.1984); *State v. Tchida*, 347 N.W.2d 338 (S.D.1984); *State v. Iron Shell*, 336 N.W.2d 372 (S.D.1983); *State v. Phipps*, 318 N.W.2d 128 (S.D.1982); *State v. McBride*, 296 N.W.2d 551 (S.D. 1980). We will not consider the issue on direct appeal unless "the defense at trial was so ineffective and counsel's representation so casual that the trial record evidences a manifest usurpation of appellant's constitutional rights[.]" *Phipps*, 318 N.W.2d at 131.

Defendant's contentions are primarily related to trial counsel's failure to make motions or objections and to other tactical decisions made by counsel.

We prefer habeas corpus relief as the means to consider ineffective assistance of counsel claims, in part, because a sufficient record on the merits can be made, enabling proper appellate review. *Anderson, supra; McBride, supra*. Based on the record in this case it is difficult to determine the propriety of counsel's tactical decisions. Counsel's representation in making these decisions was not so casual that a manifest usurpation of appellant's constitutional rights occurred. Therefore, we decline to address the merits of defendant's claims on direct appeal. Our decision does not deny appellant the right to raise the issue of ineffective assistance of counsel in a petition for habeas corpus.

Finally, defendant asserts that certain omissions of the trial court constituted "plain error." None of these contentions are supported by a citation to any constitutional, statutory, or case authority which would support even the most general propositions of law. This is a clear violation of SDCL 15–26A–60A and these issues are deemed waived. E.g. *State v. Grooms*, 359 N.W.2d 901 (S.D.1984). Moreover, defendant has merely stated these alleged errors in single sentences unaccompanied by any argument as required by SDCL 15–26A–60(6). The purpose of argument and citations to authorities is to give this court some basis on which to thoroughly consider the issues. In our adversarial system this court will not do work that appellate counsel should do. An efficient appellate court cannot simply have bare issues thrust upon it and be asked to do *all* the research itself while appellate counsel merrily abandons any effort to thoroughly research the authorities and formulate arguments.

For these reasons, the defendant's conviction is affirmed.

MORGAN, HENDERSON, SABERS and MILLER, JJ., concur in the result.

HENDERSON, Justice (concurring in result).

More than any other Justice on this Court, I have written on the harmless error rule. This encompasses a period of over eight years.

Although I concur in the result of this case, I do not agree with the adoption of the new standard set forth in the majority opinion. Under the new standard, that the "jury might and probably would have returned a different verdict if the alleged error had not occurred," it will be easier for prosecutors in this Court to gloss over prejudicial error. I agree with the *Remacle* decision, also written by Chief Justice Wuest, that "[w]hether error is prejudicial must be determined on the basis of the facts in any given case." *State v. Remacle*, 386 N.W.2d 38, 40 (S.D.1986) (quoting *State v. Waller*, 338 N.W.2d 288, 291 (S.D. 1983) (citing *State v. Branch*, 298 N.W.2d 173 (S.D.1980); *State v. Reddington*, 80 S.D. 390, 125 N.W.2d 58 (1963)). I do agree that this Court must have a standard by which to determine prejudicial error. The *Remacle* decision, which comported with previous decisions, is as recent as

1986, by the same author of the majority opinion.

We have long lived with the rule that prejudicial error is such error as in all probability must have produced some effect upon the result of the trial, namely, the verdict of the jury, and that it must be an error which is harmful to the substantial rights of those assigning it. SDCL 23A–44–14 states: "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."

The problem is in applying this statute with our previous decisions to the facts at hand. To determine prejudicial error, the facts must be examined in any given case.

Persuasion by illegitimate means is wrong. If a prosecutor persuades by illegitimate means, and it produces some effect upon the final result of the trial, it is prejudicial error if a substantial right of the defendant has been impaired. To "produce some effect" upon the final result of the trial, impliedly means that the verdict of the jury has been affected. It means that the outcome has been affected as a consequence of illegitimate means. This should not be.

The hearsay evidence in this case, although improper, was cumulative. There was evidence, which went in without objection, prior to Brenda Trembath's testimony proving the very facts sought to be established by her hearsay testimony. In *State v. Devine*, 372 N.W.2d 132, 138 (S.D.1985) (Henderson, J., dissenting), I discoursed on prejudicial error and called it a "[f]riend of those seeking to advocate constitutional guarantees and those who would ring the Liberty Bell." *Id.* at 141. I further mentioned:

"Prejudicial error" is not vacuous, vague, or vaporous. It has a well-settled meaning in this state. "Prejudicial error" is that which in all probability must have produced some effect upon the final

result and affected rights of the party assigning it. *See K & E Land & Cattle, Inc. v. Mayer,* 330 N.W.2d 529 (S.D. 1983); *State v. Tribitt,* 327 N.W.2d 132 (S.D.1982); *Matter of M.B.,* 288 N.W.2d 773 (S.D.1980); *State Highway Comm'n v. Beets,* 88 S.D. 536, 224 N.W.2d 567 (1974); *State v. Reddington,* 80 S.D. 390, 125 N.W.2d 58 (1963); and *State v. Pirkey,* 24 S.D. 533, 124 N.W. 713 (1910). *Devine,* 372 N.W.2d at 141. Now, we are informed that we should change our old rule and adopt a new one which would further lessen the rights of individuals charged with crimes, i.e., to be convicted by an even more liberal interpretation of what does and does not constitute prejudicial error. This Court has already abounded in liberality under the old rule. *See* my writings in *Remacle,* 386 N.W.2d at 40 (Henderson, J., specially concurring); *State v. Dokken,* 385 N.W.2d 493, 505 (S.D.1986) (Henderson, J., specially concurring); *State v. Chief Eagle,* 377 N.W.2d 141, 144 (S.D. 1985) (Henderson, J., dissenting); and *Devine,* 372 N.W.2d at 138 (Henderson, J., dissenting).

Apparently, as one can read by the paragraph in the majority opinion which cites *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, this Court is beginning to recognize the differences in the application of harmless error to state procedures/state law/federal constitutional questions. *See Remacle,* 386 N.W.2d at 41 (Henderson, J., specially concurring).[*]

In each one of these cases, where the question arises on prejudicial error, a platform of thought and rationale must be established and questions must be asked:

1) Was there a violation of a state procedural provision?

2) Was there a violation of a state constitutional provision?

3) Was there a federal constitutional transgression?

---

[*] I make special reference to the outstanding and scholarly work of former Chief Justice Roger Traynor of the California Supreme Court, "The Riddle on Harmless Error," appearing in Law

Forum Series of the College of Law of Ohio State University, No. 7 (Ohio State Univ. Press 1970), as cited in my special concurrence in *Remacle,* 386 N.W.2d at 41.

As I stated in my special concurrence in *Remacle*, 386 N.W.2d at 41, we cannot go back to *State v. Reddington*, 80 S.D. 390, 125 N.W.2d 58 (1963), and its progeny if a federal constitutional error arises. *Chapman's* basic tenets then becomes applicable and that is when a court must declare a belief that it was harmless beyond a reasonable doubt. *See State v. Heumiller*, 317 N.W.2d 126, 130 (S.D.1982).

Harmless error continues to be the prosecutor's friend and a woe unto defendants and defense counsel. I agree that there should be a standard but I disagree with the new standard adopted by the majority opinion, and I caution that the harmless error rule should never be used to justify unfairness at trial. *Remacle*, 386 N.W.2d at 42 (citing *State v. Webb*, 251 N.W.2d 687 (S.D.1977)).

MILLER, Justice (concurring in result).

I generally concur in the result of the majority opinion and specifically concur in the disposition of the ineffective assistance of counsel issue.

The majority opinion states that the first issue is whether there was sufficient evidence as to the values of the ties. I would hold that *this was not an issue* and certainly was not preserved for appeal. In fact, defense counsel in closing argument told the jury that value was not an issue in the case. In addition to the other value evidence articulated in the majority opinion, it must be remembered that the appellant himself admitted paying restitution in the amount of $240 for taking these specific railroad ties. The entire defense strategy centered around appellant's alleged authority to sell the ties, not around the claim that taking the ties amounted to only petty theft.

More importantly, I am not willing under these facts or in this case to commit myself to a new test for determination of harmless error. Whether we apply the "some effect" test or the "probably would have returned a different verdict" test, the result here would be the same. To assess a claim of prejudicial error the testimony giv-ing rise to the claimed error must be viewed in its proper perspective. The testimony complained of in this case was as follows:

Q (BY MR. TELLINGHUISEN) Brenda, do you recall a conversation with Midge Montgomery concerning the purchase or her prior purchase of railroad ties?

A Yes, I do.

Q And do you remember the number of ties that she told you she purchased?

MR. PUGH: Your Honor, I'm going to object. Its hearsay.

THE COURT: Overruled.

Q Do you recall?

A Yes.

Q How many ties did she indicate to you she had purchased?

A Forty ties previously.

Considering other testimony and evidence admitted in this case, the foregoing hearsay was at worst cumulative. The following evidence was received *prior* to that point and *without objection:*

1. Mr. Trembath, owner of the business, testified as to the value of the ties and established his wife Brenda as an expert to also give an opinion as to value.

2. Trembath testified that appellant had made restitution to him for these ties in the amount of $240.

3. Brenda Trembath identified that she was familiar with the price of ties; that these ties were #1 soft wood having a value of $6—$8 a piece.

I would merely hold that harmless error was committed in receiving the hearsay testimony without choosing which test shall be applied now and in the future for determining its existence.

I am authorized to state that MORGAN and SABERS, JJ., join in this concurrence in result.